KATHARINE FLAHERTY *vs.* NATHANIEL LONGLEY and another.

*Search warrant.*

A search warrant commanded the search for intoxicating liquors, upon "certain premises and their appurtenances, &c., occupied by Michael Neagle, &c. Then followed the description by metes and bounds of a block of two dwelling-houses, each separated from the other by a partition wall, with no means of communication on the inside—one occupied by Michael Neagle and the other by Flaherty. In trespass for ale seized in Flaherty's house; *held*, that the warrant did not authorize the search of Flaherty's house.

ON EXCEPTIONS.

TRESPASS *de bonis* for taking and carrying away twenty bottles of ale belonging to the plaintiff, and taken by the defendants from her father's cellar. The defendants justified under a search warrant, the essential portions of which, together with the other facts necessary to an understanding of the question presented, are fully stated in the opinion.

The action originated in the municipal court of Bath and was brought up by the plaintiff on appeal, and a verdict obtained for the defendants, upon the refusal of the presiding justice to instruct (as requested by the plaintiff) that the warrant did not justify the officers in entering any premises not occupied by Michael Neagle; that they had no authority to enter Flaherty's house; and, such entry being illegal, therefore they were liable as trespassers; and giving an instruction that the officers were authorized to take the ale if found in a house "embraced in the premises described by metes and bounds in said complaint."

*W. Gilbert,* for the plaintiff.

The verdict was practically directed by the judge, and the question is whether his construction of the law was correct. It is true Flaherty's house was within the geographical limits given as the premises to be searched; but there was a further essential qualification of the description: i. e., that only so much of that territory as was "occupied by Michael Neagle" was to be searched. No part of Flaherty's house was described as used as a shop. R. S., c. 27, § 35.

*C. W. Larrabee,* for the defendants.

VIRGIN, J. The complaint alleged that, on a certain day therein named, "intoxicating liquors were and still are kept and deposited by Michael Neagle, of Bath, in said county, in certain premises and their appurtenances in said Bath, occupied by said Neagle and in which a shop is kept by him, and bounded on the East by Water street, on the South by premises occupied by Reed Nichols, on the West by land occupied by one Campbell, and on the North by land of the Railroad Company." The warrant commanded the defendant "to enter the premises named in the complaint, and *therein* search for said liquors, and, if *there* found to seize and safely keep the same * * and to apprehend the said Michael Neagle," &c. The territorial limits mentioned embraced a block of two dwelling-houses, each separated from the other by a partition wall, with no inside means of communication—one "occupied by Michael Neagle," and the other (from which the plaintiff's ale was taken) occupied by the plaintiff's father and family.

The question is whether the defendants were authorized by the warrant to search the dwelling-house of Flaherty and seize the plaintiff's ale therein. If the defendants were not thereby authorized to search Flaherty's house, then the seizure of the plaintiff's ale "*there* found" would be a trespass; for the warrant authorized a seizure in the place only in which it commanded the search to be made.

Art. 1, § 5 of the constitution forbids the issuing of a warrant

"to search any place or seize any person or thing" * * "without a special designation of the place to be searched." And R. S., c. 27, § 35, on which these proceedings are founded, provides that the magistrate shall issue his warrant commanding the officer "to search the premises described and specially designated in such complaint and warrant." Was the dwelling-house of Flaherty "described and specially designated" in the complaint at bar? We think it was not. The place to be searched was accessible—readily and easily described. There was no necessity for any general and indefinite description; and it was Neagle's premises which the officer believed contained the liquors. We cannot believe that the officer was justified in searching both houses simply because both are within the geographical limits mentioned; especially as the house of Neagle only was specially designated, and he was the only person charged with the offence set out.

Again, there is no pretence that any part of Flaherty's house was "used as a shop," &c., and "no warrant shall be issued to search a dwelling-house, occupied as such, unless it, or some part of it, is used as an inn or shop," &c. R. S. c. 17, § 38.

To hold the officer justified in this case, would justify an entire street or village to be searched by a warrant mentioning its metes and bounds, although the premises of but one of its residents be specially designated, either by its number, or by the name of its occupant.

If the plaintiff's ale had been seized in the premises occupied by Neagle, and therefore in the place authorized by the warrant to be searched, then, although it might not have been intended for unlawful sale, the officer might lawfully seize it; and the plaintiff's remedy would be found under § 37, et seq, for then it would be "seized as provided in § 35." But it not having been seized in the place "described and specially designated in the complaint and warrant," and therefore not "as provided in § 35," the plaintiff was not obliged to seek her remedy, under § 37, et seq., but could, as she did, resort to her action of *trespass de bonis asportatis.* *Exceptions sustained.*

APPLETON, C. J., CUTTING, DICKERSON and DANFORTH, JJ., concurred.

WALTON, BARROWS and PETERS, JJ., did not concur. They held that, inasmuch as the building to be searched was accurately described by metes and bounds, the officer was justified in searching every part of it, notwithstanding it was also described as occupied by Michael Neagle, when in fact he occupied but one of the two tenements which the building contained. They held that the description by metes and bounds, being accurate and specific, was the more reliable of the two descriptions; and that the officer was, therefore, justified in following it, and was not a trespasser for so doing.