(73 N. W. Rep. 524.)

---

## STATE *vs.* NORMAN MARKUSON.

Opinion filed December 6th, 1897.

**Injunction Pendente Lite.**

> An injunctional order in an equity case, *pendente lite*, issued by a court having full equity powers and complete jurisdiction of the subject-matter, must be obeyed while it remains in force, however irregularly or erroneously it may have issued.

**Description of Place to be Searched.**

> Section 18, Const., declares that no search warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons or things to be seized. *Held*, that a description of the premises as a certain lot, in a certain block, in a certain city, was sufficiently specific, where there was in fact but one building on the lot, and said building was occupied entirely by the defendants in the action.

**Only Place Where Liquor Found—Closed.**

> Where a search warrant it issued under the provisions of the prohibitory liquor law directing the search of a building occupied by two or more tenants in separate and distinct tenements, and intoxicating liquors are found in one of such tenements only, the officer must, under the statute, take possession of and close such tenement, but cannot close the tenements of the other tenant or tenants.

**Description of Property to be Seized.**

> Where personal property to be seized under such search warrant is described as "all articles found therein used in or about the carrying on of the business aforesaid," such description being as particular as the circumstances of the case will ordinarily permit, it is sufficient to satisfy the constitutional requirement above quoted.

**Construction of Statute.**

> The words "take and hold possession of all personal property found on such premises," found in § 7605, Rev. Codes, read in connection with the context, and, under the authorities, *held* to mean the personal property found on the specific premises; *i. e.* the particular tenement or room where intoxicating liquors are kept for sale contrary to law.

**No Jury in Trial for Contempt.**

> When, under the provisions of said § 7605, Rev. Codes, a defendant is brought before the court to be tried for an alleged contempt of court in violating the terms of an injunctional order issued in the case, such defendant is not entitled to a jury trial. *State* v. *Markuson*, 5 N. D. 147, reaffirmed.

**Pleading Former Conviction.**

> In pleading a former conviction for contempt of court, in order that a, defendant may be adjudged guilty as of a second offense, it is only necessary, under § 7614, Rev. Codes, to allege briefly that such conviction was had.

Appeal from District Court; Barnes County; *Glaspell*, J.

Action by the State of North Dakota against Norman Markuson and another to abate a nuisance caused by the keeping and selling of intoxicating liquors in violation of law, in which a temporary injunction was issued, and the state's attorney afterwards filed an affidavit showing that defendant Markuson had been guilty of a contempt of court in that he had violated the injunctional order. A plea of "not guilty" was interposed and a trial had to the court without a jury, defendant was adjudged guilty of contempt and sentenced to one years imprisonment in the state penitentiary. He appeals.

Affirmed.

*M. Conklin, M. E. Remmen,* and *W. H. Barnett,* for appellant.

The restraining order in this case was broader than the statute, was without authority and in excess of the prayer for relief. It enjoined the doing of acts not within the statutory prohibition. Section 7605, Rev. Codes. The order being void, it was not contempt to disobey it. 2 High on Inj. 1425; *Lester* v. *Peo.,* 35 N. E. Rep. 387; *In re McLain,* 68 N. W. Rep. 163. Before defendant could be properly convicted for a second offense, the complaint should specifically charge the former conviction and also

the judgment entered upon such conviction. Clarke's Crim. Pro. 204; *Tuttle* v. *Com.*, 2 Gray, 506; *Com.* v. *Harrington*, 130 Mass. 35; *Reg.* v. *Willis*, 12 Cox Crim. Cases, 192; *State* v. *Adams*, 13 At. Rep. 785; *Harris* v. *Com.*, 107 Mass. 198. Defendant was convicted of a felony without a jury trial in violation of his constitutional rights. Sections 7 and 8, Const. Neither the affidavit or search warrant describe the building or premises to be searched, neither named the owner or person in possession. Such a warrant is void. Cooley Const. Law, 304; *Humes* v. *Tabor*, 1 R. I. 464; *Com.* v. *Intoxicating Liquors*, 109 Mass. 371; *Jones* v. *Fletcher*, 41 Me. 254; *Grumon* v. *Ramond*, 6 Am. Dec. 200.

*Edward Winterer, States Atty.*, for respondent.

If the injunctional order was improvidentially issued still a violation of the same would be contempt. 5 Crim. Law, Mag. 178; *Sullivan* v. *Judah*, 4 Paige, 442; *Stimpson* v. *Putnam*, 41 Vt. 238; *Peo.* v. *Bergen*, 53 N. Y. 404; High on Inj. 847; *Peo.* v. *Spalding*, 2 Paige 326; *Mead* v. *Norris*, 21 Wis. 310; *Erie Co.* v. *Ramsey*, 45 N. Y. 637. Only an entire want of jurisdiction will relieve the offending party of contempt. 5 Cr. L. Mag. 185; *Matter of Morton*, 10 Mich. 208. The description in a search warrant will be sufficiently certain if it is such as would if used in a deed convey specific real estate. Black Int. Liq. 411; *State* v. *Bartlett*, 47 Me. 388; *State* v. *Robinson*, 33 Me. 564. If the description of the place to be searched is faulty or meagre, that does not invalidate the warrant. *Metcalf* v. *Weed*, 19 At. Rep. 1091. The description was sufficient. *State* v. *Minnehan*, 22 At. Rep. 177; *In re Hougan's Liquors*, 18 At. Rep. 279; *Meek* v. *Pierce*, 19 Wis. 300; *Paquet* v. *Emery*, 32 At. Rep. 881; *Peo.* v. *Hess*, 48 N. W. Rep. 181.

BARTHOLOMEW, J. In June, 1896, an action in equity was commenced by the assistant attorney general against the defendant Norman Markuson and one Murphy, for the purpose of abating a nuisance which it was alleged the defendants kept and maintained on lot 4 in block 25 of the original plat of the City of Valley City, in Barnes County. The nuisance consisted in keeping a place

where intoxicating liquors were sold and kept for sale in violation of the constitution and laws of this state. The action was brought under that portion of § 7605, Rev. Codes, which reads as follows: "The attorney general, his assistant, state's attorney, or any citizen of the county where such nuisance exists or is kept or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action in the usual manner of granting injunctions, except that the affidavit or complaint or both, may be made by the state's attorney, attorney general or his assistant upon information and belief; and no bond shall be required; and if an affidavit shall be presented to the court or judge, stating or showing that intoxicating liquor, particularly describing the same, is kept for sale, or is sold, bartered or given away on the premises, particularly describing the same, where said nuisance is located contrary to law, the court or judge must at the time of granting the injunction issue his warrant commanding the officer serving said writ of injunction, at the time of such service, to search diligently the premises and carefully invoice all the articles found therein, used in or about the carrying on of the unlawful business, for which search and invoicing said officer shall receive the sum of ten dollars in addition to the fees now allowed by law for serving an injunction. If such officer upon such search shall find upon such premises any intoxicating liquor or liquors of any kind, he shall take the same into his custody and securely hold the same to abide the final judgment in the action (the expenses for such holding to be taxed as part of the costs in the action;) and such officer shall also take and hold possession of all personal property found on such premises, and shall take and hold possession of such premises and keep the same closed until such final judgment. The finding of such intoxicating liquor or liquors on such premises shall be *prima facie* evidence of the existence of the nuisance complained of. Any person violating the terms of any injunction granted in such proceedings shall be punished for contempt, for the first

offense by a fine of not less than two hundred nor more than one thousand dollars, and by imprisonment in the county jail not less than ninety days nor more than one year, and for the second and every successive offense of contempt by imprisonment in the penitentiary no exceeding two years and not less than one in the discretion of the court or judge thereof. In case judgment is rendered in favor of the plaintiff in any action, brought under the provisions of this section, the court or judge rendering the same shall also render judgment for a reasonable attorney's fee in such action in favor of the plaintiff and against the defendants therein; which attorney's fee shall be taxed and collected as other costs therein, and when collected paid to the attorney or attorneys of the plaintiff therein; provided, if such attorney is the state's attorney such attorney's fee shall be paid into the county treasury as in § 7603 provided. In contempt proceedings arising out of the violation of any injunction granted under the provisions of this chapter, the court, or in vacation the judge thereof, shall have the power to try summarily and punish the party or parties guilty as required by law. Process shall run in the name of the State of North Dakota. The affidavits upon which the attachment for contempt issues shall make a *prima facie* case for the state. The accused may plead in the same manner as to an information or indictment, in so far as the same is applicable. Evidence may be oral or in the form of affidavits, or both; the defendant may be required to make answer to interrogatories, either written or oral, as in the discretion of the court or judge may seem proper; the defendant shall not necessarily be discharged upon his denial of the facts stated in the moving papers; the clerk of the court shall upon the application of either party, issue subpœnas for witnesses, and except as above·set forth, the practice in such contempt proceedings shall conform as nearly as may be to that adopted by the ninetieth rule of the Supreme Court of the United States for proceedings in equity in the circuit courts."

The complaint was in the usual form, and prayed the usual

temporary injunction *pendente lite*, which was issued; and, the affidavit required by the statute being also filed, a search warrant was issued at the same time. The injunctional order, after reciting the preliminary facts, enjoined and restrained the defendants, their agents, etc., from using "lot 4 in block 25' of the original townsite of the City of Valley City, Barnes County, N. D.," as a place for keeping or selling intoxicating liquors, or permitting the same to be so used, and contained a further clause, as follows: "And if the sheriff, constable, or marshal, or any other officer, serving or executing the summons, complaint, affidavit for search warrant, search warrant, injunctional order, or any other order of this court, issued in said action, shall take possession of said premises or any part thereof, or of any personal property found in or upon said premises, the defendants, their attorneys, agents and servants, and each of them, are hereby restrained and enjoined from interfering in any way whatever with said premises or personal property, or any part thereof, after such possession is taken, and from entering into said premises so taken possession of, or disturbing in any manner the possession of said sheriff, constable, or marshal or other officer, until the further order of this court." In the search warrant the premises to be searched were described in the same language as in the injunctional order, and the warrant continued: "Now, therefore, you are hereby commanded, at the time of serving the aforesaid injunctional order, bearing even date herewith, to diligently search the premises above described, and carefully invoice all articles found therein, used in or about the carrying on of the business aforesaid; and if, upon such search, you shall find upon said premises any intoxicating liquors of any kind, you shall take the same into custody, and securely hold the same to abide the final order and judgment of this action, and also take and hold possession of all personal property found on such premises, and take and hold possession of such premises, and keep the same closed until such final judgment." In June, 1897, said equity case being still pending and undecided, the state's attorney for Barnes County filed

his own affidavit and that of one Hans O. Hagen, showing that said defendant Markuson had been guilty of a contempt of court, in that he had violated the injunctional order issued in the case. The affidavits also recited a former conviction for contempt under that same statute.   Upon these affidavits an attachment for contempt was issued against the defendant, and he was brought before the court thereon.   Upon being arraigned, the defendant moved that the information and attachment be dismissed and quashed, for the reason that the search warrant and injunction in the case are void:   (1) Because the search warrant is contrary to the provisions of § 18 of our state constitution, in that it does not particularly describe the place to be searched or the things to be seized; and (2) the provisions of § 7605, Rev. Codes, which directs the officer, in case he finds intoxicating liquors on the premises to be searched, to seize and take into his possession all personal property found on said premises, are in conflict with § 13 of the constitution, in that said section authorizes the seizure of property without due process of law.   Defendant also claimed that the contempt set forth in the information did not come within the provisions of said § 7605, and that, therefore, he should be permitted to plead and be tried under the terms of the general statute on contempt, (Rev. Codes, § 5932, *et seq.*)   He also demanded a trial by jury.   All these points were ruled against defendant, and exceptions saved. Thereupon the court proceeded to hear the matter summarily under the provisions of said § 7605.   Evidence was introduced both by the state and by the defendant.   The court made findings of fact and conclusions of law against defendant, and judgment was pronounced thereon, declaring defendant guilty of contempt of court, as of a second offense, and sentencing him to imprisonment in the penitentiary for the term of one year.   Exceptions were saved to the findings and judgment, and the case comes to this court on a statement.

In disposing of the case, it will be convenient to first discuss the point that the alleged contempt does not come within the provi-

sions of § 7605, and that, therefore, the defendant was improperly tried thereunder.   The informing affidavit states, in substance, that immediately after the service of the injunctional order and search warrant in the original case, and after the officer had found intoxicating liquor on said premises, and had seized the same, and had taken possession of and closed the premises, the defendant, with the unlawful aid and assistance of certain persons, broke open said premises, and took the said intoxicating liquors therefrom, and carried the same away.   It will be noticed that this was a violation of the exact terms of the injunctional order.   But it is contended that said section does not authorize an injunction of so broad scope; that it authorizes, at least before final judgment, only an injunction restraining the maintenance or continuance of a nuisance on the premises named.   We do not think this point is before us.   The original action in equity was brought under § 7605, before a court with full equity powers; and in the exercise of those powers, and acting under said section, the court issued its order prohibiting the very acts specified in the information. So far as we are advised, no steps whatever have been taken to have that injunction set aside or modified.   Rather, the defendant elected to defy it, and override its commands by force.   This he cannot do, however irregularly or erroneously the injunction may have been issued, provided only the court had jurisdiction of the subject-matter.   High, Inj. (2d Ed.) § 1416, *et seq.*, and the authorities there cited.   The case of *Mayor, etc. of New York* v. *New York & S. I. F. Co.*, 64 N. Y. 623, is a direct answer to defendant's claim that the injunction was broader than the prayer in the bill.

Section 18, Const. N. D., reads:   The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."   Were the premises to be searched and the property to be seized sufficiently described

in this case? The premises were described as "lot 4, block 25, of the original townsite of the City of Valley City, Barnes County, N. D." Black on Intoxicating Liquors (§ 357) says: "There is perhaps no single test that could be invariably applied to the description in a warrant to determine its sufficiency. But it has been said in general terms that the description will be sufficiently certain if it is such as would be required in a deed to convey a specific parcel of real estate." To same effect, see *State* v. *Robinson*, 33 Me. 564, and *State* v. *Bartlett*, 47 Me. 388. Taking this test as conclusive, the description in the case before us would be perfect in every particular, as it contains exactly the language that would be used in a conveyance of the title. It is urged, however, that this test cannot be conclusive, as there might be several buildings on "lot 4 in block 25," and several tenants in each building, and under this description the rights of innocent parties might be invaded. Said the court in *State* v. *Robinson*, *supra*: "The administration of law is occasionally and perhaps unavoidably so imperfect that innocent persons may be subjected to inconvenience and expense by official acts and processes designed for the punishment of the guilty." But this description does not need the aid of that concession. It is undoubtedly true, as stated by Mr. Black, that there is no single test by which the sufficiency of a description can be invariably determined. Much must depend upon the nature and condition of the premises and the surroundings. In *Flaherty* v. *Longley*, 62 Me. 420, the premises were alleged to be in the possession of one N., but by metes and bounds a block was described which contained two houses, only one of which was occupied by N. It was held in that case that the officer was not warranted in searching the house not occupied by N.; three judges dissenting, and holding that the officer was warranted in searching both houses. See, also, *Com.* v. *Newton*, 123 Mass. 420; *State* v. *Thompson*, 44 Iowa, 399. These cases established the doctrine that where there is more than one building upon the described premises, only one of which is occupied by the defendant, or where one building is occupied by the

defendant, and another in seperate tenements, then the officer
may search the building or tenement occupied by the defendant.
In this case the complaint alleged the ownership of the building
in one Murphy, and that he leased it to Markuson. Murphy and
Markuson were joint defendants in the equity action, and the
search warrant ran against both. The affidavit alleged the existence
of the nuisance on said lot, and that Markuson was conducting
the business, which was equivalent to an allegation that Markuson
was in possession of the portion where the nuisance was con-
ducted. There was, in fact, but one building on the lot. Marku-
son rented and occupied the lower part, and had keys to all the
entrances thereto. Murphy used the upper part for dwelling
purposes. Inasmuch as the search warrant ran against both, there
can be no doubt as to the sufficiency of the description of the
place to be searched.

We think, too, the description of the property to be seized was
sufficient. We must not place a construction either upon the
constitution or the statute that will render compliance therewith
impossible. A description as specific as the nature of the case
will warrant ought generally to be sufficient. To require more
might result in a failure of justice. The object of our statute is
to enforce compliance with the prohibitory article in the consti-
tution, and, to that end, the legislature has seen proper to declare
all places where intoxicating liquors are sold contrary to law
public nuisances; and, the better to suppress such nuisances, it
has provided that the premises where such nuisance is maintained
may be seized and closed, and that the intoxicating liquors so
kept for sale may be seized, together with all the personal prop-
erty used in carrying on such unlawful traffic. Statutes authoriz-
ing a search for and seizure of intoxicating liquors kept for sale
in violation of law have long been in force in some of the states;
and, under these statutes, it has never been required that the
search warrant should specifically describe the liquors to be
seized. Where the liquors are described as "certain spirituous
and intoxicating liquors, to-wit, beer, whisky, rum, brandy," etc.,

the description is sufficient, and the officer under such warrant may seize any one or more of the kinds of liquors described, although none of the other kinds be found; and, if the quantity of liquor be specially named, still the officer may seize a less quantity or a greater quantity. *State* v. *Whisky*, 54 N. H. 164; *In re Horgan's Liquors*, (R. I.) 18 Atl. 279; *Com.* v. *Intoxicating Liquors*, 97 Mass. 63; *State* v. *Brennan's Liquors*, 25 Conn. 278. All these cases—and they were decided under constitutional provisions the same in substance as ours—proceed upon the theory that the substantial thing to be seized is intoxicating liquor, and neither the character nor quantity of the liquor is material. The other property to be seized by the officer is the paraphernalia used in conducting the nuisance. It matters not whether the articles be many or few, costly or crude, so they be the particular articles used in any given case to enable a party to carry on a business prohibited by law. If it be necessary that the search warrant shall particularly describe the counters, mirrors, tables, chairs, decanters, bottles, glasses, etc., in each instance, then it would be impossible to seize these articles once in a hundred times. We cannot thus nullify the law. We think, where they are described as "all articles found therein used in and about the carrying on of the business aforesaid," that such description is as specific as the circumstances will admit or as the law requires. But the search warrant in this case, following the exact language of the statute, directs the officer to "also take and hold possession of all personal property found on such premises." This, appellant insists, is taking property without process of law, and is a clear violation of § 13 of the Const. He argues that under this command, if the officer found intoxicating liquors in a room in the basement of a large hotel, it would be his duty to seize and hold all personal property in the hotel, irrespective of ownership. This construction would render the statute palpably unconstitutional. But, under well settled rules of construction, it is our duty to so construe this statute that it will stand, if its language will reasonably admit such a construction. In this case

we have no doubt or hesitation whatever. When the warrant directed the officer to "hold possession of all personal property found on such premises," what premises were intended? Under the decisions already cited on the question of the description of the premises, as well as the connection in which we find the language in the statute, it is clear that "such premises" means the particular premises—the tenement, the rooms—in which such unlawful business is carried on. The officer can seize and search and close up no other premises. The personal property so to be held is simply the personal property used in conducting the nuisance. The statute—and the search warrant followed its wording—first directed the officer to "diligently search the premises above described, and carefully invoice all articles found therein, used in or about the carrying on of the business aforesaid." Then, if the officer found intoxicating liquor on the premises, he was directed to seize and hold the same, and "also to take and hold possession of all personal property found on the premises, and take and hold possession of such premises, and keep the same closed until final judgment." It would be exceedingly unreasonable to say that while the legislature, in one line, directed the officer to carefully invoice the personal property used in conducting the nuisance (usually very limited in amount, and worth but a few dollars,) in the next line it should direct him to seize thousands of dollars' worth of personal property without any invoice or identification whatever. That it never did so intend is clear when we remember that he is required to take possession of "such premises," and keep them closed; but the only place that he can thus keep closed is the specific tenement wherein the unlawful traffic was maintained. The personal property must be the personal property found in the same place, and that would necessarily be the property that he had invoiced. Thus construed, the statute is entirely constitutional, and the search warrant was fully authorized by the law.

The right of a defendant to a trial by jury in contempt proceedings of this character was fully considered by this court in

*State* v. *Markuson*, 5 N. D. 147, 64 N. W. Rep. 934. We held that such right did not exist. That conclusion was reached only after protracted and careful consideration. Counsel attack that decision, and asked us to reconsider it. But further study has only strengthened our convictions. We find nothing in that opinion that we desire to retract or modify. Nor need we here repeat what was there said. True, this defendant in this case stands convicted of a second offense of contempt of court, and a much more severe punishment has been pronounced against him. Counsel inveighs against this punishment, as being beyond that which any court may constitutionally inflict without the intervention of a jury. But in the former case counsel took the position —and, no doubt, correctly—that the diverse punishments under the statute were so interwoven and interdependent that, if one fell, both must fall; hence counsel in that case directed his arguments against the augmented punishment, knowing that its destruction would carry with it the destruction of the lesser punishment. Hence, necessarily, the very point here involved was decided in that case. To avoid any misapprehension, we wish to emphasize one thought in the former opinion. While the statute expressly authorizes the punishment here inflicted, and while constitutional courts recognize the legislative right to control their power to punish for contempt so long as such control does not lessen the effectiveness of such power, yet the power itself is not derived from or in any manner dependent upon the statute. It is a necessarily inherent power, and, as shown in the former opinion, this must be so, or courts must abdicate their function. And this power must include the right to punish to an extent that will secure obedience to its lawful orders; and as we, in effect, said in the former opinion, it is entirely immaterial whether this punishment falls within or beyond the limit that our statute fixes as a punishment for misdemeanors. The fact that this same defendant stands before this court again, convicted of a further contempt of court, in a proceeding under the same statute as before, clearly demonstrates that the punishment

heretofore inflicted has been inadequate to secure obedience to the orders of the court. He has apparently demonstrated the truth of what we said before. He has found the profits arising from the illegal traffic in intoxicating liquor so great that he can afford to pay the fine imposed, and yet make money in violating the orders of the court. It was the imperative duty of the court to see that these conditions did not continue.

The point that there are not sufficient allegations or proof to sustain a judgment for a second offense is without merit. The rule requiring the former conviction and judgment to be pleaded at length is entirely abrogated in these cases by our statute (§ 7614, Rev. Codes,) which declares that "it shall not be requisite to set forth in the information or affidavit or indictment the record of the former conviction, but it shall be sufficient briefly to allege such conviction." This was done in the affidavit in this case, and the former record was introduced in evidence.

It is also urged that the evidence in the case fails to establish the fact that the defendant committed the contempt of which he stands convicted. The findings of the trial court fully cover the point. We have examined the evidence, but its reproduction here could serve no good purpose. It is enough to announce as our conclusion that we are fully satisfied with the finding of the trial court.

Finding no error in the record, the order and judgment of the District Court must be affirmed. All concur.

(73 N. W. Rep. 82.)

NOTE—Other decisions under the prohibitory liquor law. *State* v. *Markuson*, 5 N. D. 147; *In re Markuson*, 5 N. D. 180; *State* v. *McNulty*, *infra*; *State* v. *O'Grady*, *infra*; *State* v. *Swan*, 1 N. D. 5; *State* v. *Haas*, 2 N. D. 202; *State* v. *Barnes*, 3 N. D. 319; *State* v. *Kerr*, 3 N. D. 523; *State* v. *Fraser*, 1 N. D. 425; *State* v. *Dellaire*, 4 N. D. 312; *Leisey* v. *Harden*, 135 U. S. 100; *Territory* v. *O'Connor*, 5 Dak. 397.