(74 South. 103)

No. 22288.

STATE v. NEJIN.

(Jan. 15, 1917.)

*(Syllabus by the Court.)*

1. STATUTES ⬦118(1)—SUBJECT AND TITLE—
CONSTITUTIONAL PROVISIONS.

Act. No. 8 of 1915 (Ex. Sess.), in defining
and prohibiting the keeping of a blind tiger, and
providing for the search for, and seizure of,
intoxicating liquors, does not contravene article
31 of the state Constitution, which declares that
every law shall embrace but one object, and that
shall be expressed in the title. The search for
and seizure of the liquor is a means provided
for the accomplishment of the one object of the
act; i. e., to prohibit the keeping of blind tigers.

[Ed. Note.—For other cases, see Statutes,
Cent. Dig. §§ 158, 159; Dec. Dig. ⬦118(1).]

2. CONSTITUTIONAL LAW ⬦251—SEARCHES
AND SEIZURES ⬦7—CONSTITUTIONAL PRO-
VISIONS—INTOXICATING LIQUORS.

The act does not contravene article 7 of the
state Constitution, which guarantees the peo-
ple against unreasonable searches and seizures,
and declares that no search warrant shall issue
except upon probable cause, supported by oath
or affirmation, particularly describing the place
to be searched and the persons or things to be
seized. The Fourth and Fourteenth Amend-
ments to the Constitution of the United States
are inapplicable in this case.

[Ed. Note.—For other cases, see Constitution-
al Law, Cent. Dig. §§ 726, 727, 732; Dec. Dig.
⬦251; Searches and Seizures, Cent. Dig.
§ 5; Dec. Dig. ⬦7.]

3. CONSTITUTIONAL LAW ⬦296(1)—EMINENT
DOMAIN ⬦2(1) — INTOXICATING LIQUORS
⬦15—DUE PROCESS OF LAW—TAKING OF
PRIVATE PROPERTY WITHOUT COMPENSA-
TION.

It contravenes no constitutional provision
prohibiting the taking or destruction of private
property, without due process of law, or without
compensation to the owner.

[Ed. Note.—For other cases, see Constitution-
al Law, Cent. Dig. § 826; Dec. Dig. ⬦296(1);
Eminent Domain, Cent. Dig. §§ 3–8; Dec. Dig.
⬦2(1); Intoxicating Liquors, Cent. Dig. §§
17, 18; Dec. Dig. ⬦15.]

4. CONSTITUTIONAL LAW ⬦208(2)—DISCRIM-
INATORY LAWS — INTOXICATING LIQUORS —
OFFENSES—TERRITORY.

It contravenes no constitutional provision
by reason of its application exclusively to "dry"
or "prohibition" territory.

[Ed. Note.—For other cases, see Constitution-
al Law, Cent. Dig. § 649; Dec. Dig. ⬦208(2).]

5. STATUTES ⬦77(4) — "LOCAL OR SPECIAL
LAW"—INTOXICATING LIQUORS.

It applies in every community in the state
where, in the exercise of the right of local op-
tion, the people have prohibited the sale of
intoxicating liquor, and is applicable in every
other community, in the sense that, should any
other exercise the same right, it will come im-
mediately under its dominion. It is not, there-
fore, a local or special law within the meaning
of articles 48 and 50 of the Constitution.

[Ed. Note.—For other cases, see Statutes,
Cent. Dig. §§ 79, 80; Dec. Dig. ⬦77(4).

For other definitions, see Words and Phrases,
First and Second Series, Local Law.]

6. STATUTES ⬦75—GENERAL LAW—REPEAL—
CONSTITUTIONAL PROVISIONS.

It does not violate article 49 of the Con-
stitution by partially repealing a general law,
in the sense of that article. The general law
(relating to grog and tippling shops) became
inoperative in territory which became dry, not
by reason of the act in question, but by the vote
of the electors.

[Ed. Note.—For other cases, see Statutes,
Cent. Dig. § 77; Dec. Dig. ⬦75.]

7. CRIMINAL LAW ⬦1201—STATUTES—SUBSE-
QUENT OFFENSES — CONSTITUTIONAL AND
STATUTORY PROVISIONS—PENALTY.

Section 974 of the Revised Statutes, which
provides that additional penalties may be im-
posed for second, third, and fourth offenses,
has not been repealed by article 159 of the Con-
stitution, which requires the General Assembly
to fix the maximum and minimum penalties for
misdemeanors and minor offenses against the
state. The section in question, and statutes fix-
ing maximum and minimum penalties in partic-
ular cases, are laws in pari materia, and are to
be construed together, and, so construed, the
minimum penalties may be found in the statutes
and the extreme maximum penalties in the sec-
tion.

[Ed. Note.—For other cases, see Criminal
Law, Cent. Dig. § 3254; Dec. Dig. ⬦1201.]

8. CRIMINAL LAW ⬦1202(1)—PENALTY FOR
SUBSEQUENT OFFENSE—JURISDICTION—CON-
STITUTIONAL AND STATUTORY PROVISIONS.

The Constitution declares that cases in
which the penalty is not necessarily at hard
labor (meaning imprisonment at hard labor in
the penitentiary), or death, shall be tried by the
courts, without juries; that the General As-
sembly may provide for the prosecution of mis-
demeanors on affidavits, and shall have power
to create, in cities of a certain population, courts
with criminal jurisdiction which shall not ex-
tend beyond the trial of offenses not punishable
by imprisonment at hard labor, under the laws
of the state; and the General Assembly, in the
proper exercise of that power, created the city
court of the city of Shreveport, and vested it
with that jurisdiction, and other jurisdiction
which it was competent to confer. The judge

of that court is therefore vested with jurisdiction of offenses against the state, and is within the terms and intendment of section 974 of the Revised Statutes.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. ☞1202(1).]

**9. CRIMINAL LAW ☞1202(3, 7)—SECOND OFFENSE—EVIDENCE.**

Where, in the prosecution, upon affidavit, of an offense required to be prosecuted in that way, the affidavit fails to charge that the offense is the second or third of the kind committed by the defendant, evidence of such fact, offered upon the basis of an unsworn statement to that effect, filed after the affidavit, in order that the penalty may be increased, as provided by Rev. St. 974, is inadmissible.

The defendant in such case is entitled to be fully informed, in the manner prescribed by law, concerning the charge that he is to meet, and such information carries with it the knowledge of the penalty that may be imposed upon him. And when the trial takes place before the judge without a jury, and the evidence mentioned has been admitted, and the increased penalty has been imposed, the conviction, as well as the sentence, will be set aside.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3261, 3265; Dec. Dig. ☞1202(3, 7).]

**10. CRIMINAL LAW ☞254—WEIGHT OF EVIDENCE—REASONABLE DOUBT.**

It is elementary that in order, legally, to convict a person charged with a criminal offense, the trial judge must be convinced, beyond a reasonable doubt of his guilt, and it is error for him to refuse to be guided by a "proposition of law" to that effect, submitted in accordance with the provisions of Act No. 93 of 1916.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 537, 538, 543; Dec. Dig. ☞254.]

**11. CRIMINAL LAW ☞260(11)—APPEAL—JURISDICTION OF SUPREME COURT—EVIDENCE.**

Where, in a prosecution, under Act No. 8 of 1915 (Ex. Sess.) for keeping a "blind tiger," the trial judge refuses to be guided by the proposition (submitted agreeably to the provisions of Act No. 93 of 1916) that "the law does not denounce the possession of whisky or other intoxicating liquors; a man may keep on hand any quantity of such liquors without violating any law, and the mere possession of such liquors does not even make out a prima facie case under the charges preferred," this court will not review his ruling, since it has no jurisdiction, in a criminal case, to determine the effect that should be given to admissible evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 569–571, 586–589, 591; Dec. Dig. ☞260(11).]

**12. CRIMINAL LAW ☞666(1)—TRIAL—STATE'S PRESENTATION OF EVIDENCE.**

The state, in fairness to the accused, should present its case at the opening, but we know of no rule which requires that in so doing it must call to the stand any other witness than those whom the prosecuting officer considers necessary, or which justifies the presumption that those whom he does not call would testify unfavorably to the prosecution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1567; Dec. Dig. ☞666(1).]

*(Additional Syllabus by Editorial Staff.)*

**13. SEARCHES AND SEIZURES ☞7—CONSTITUTIONAL PROVISIONS — "PARTICULARLY DESCRIBING THE PLACE TO BE SEARCHED AND THE PERSONS OR THINGS TO BE SEIZED."**

The language "particularly describing the place to be searched and the persons or things to be seized," as used in U. S. Const. Amend. 4, and Const. art. 7, is to be reasonably interpreted as meaning that the "place" is to be designated with sufficient accuracy to prevent the officer from searching the premises of one person under a warrant directed against those of another, and it does not necessarily require a minute and detailed description of the property to be seized.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. ☞7.]

Appeal from City Court of Shreveport; D. B. Samuels, Judge.

F. A. Nejin was convicted of keeping a blind tiger, his motions in arrest of judgment and for a new trial were overruled, and he excepts and appeals. Conviction and sentence appealed from annulled and set aside, and case remanded.

Charles F. Crane and Foster, Looney & Wilkinson, all of Shreveport, for appellant. A. V. Coco, Atty. Gen., W. A. Mabry, Dist. Atty., and S. I. Foster, Asst. Dist. Atty., both of Shreveport (Vernon A. Coco, of Marksville, of counsel), for the State.

MONROE, C. J. Defendant was charged with keeping a blind tiger and, some days later, the assistant district attorney filed an unsworn statement in the case to the effect that he (defendant) had previously been twice convicted of the same offense. Defendant moved to quash the charge, which motion

was overruled, and, having been put on trial, he reserved several bills of exception, and, after conviction, filed motions in arrest of judgment and for new trial, which were also overruled. He was sentenced to pay a fine of $1,000, and to serve 12 months on the public works of the city of Shreveport, and, in default of payment of the fine, to so serve 12 months more. The motions to quash and in arrest are predicated upon the averments that the charge against defendant is based upon Act No. 8 of 1915 (Extra Session), and that the act contravenes certain articles of the state and federal Constitutions, to wit:

[1] First. That the title expresses two objects which are also embraced in the text, in contravention of article 31 of the state Constitution, to wit: To define and prohibit the keeping of a blind tiger, and to provide for the search for and seizure of intoxicating liquors.

The search for and seizure of the liquors is a means provided for the accomplishment of the one object of the act, i. e., to prohibit the keeping of blind tigers, and, being germane to that object, it was unnecessary that it should have been mentioned in the title. It was so held in State v. Doremus, 137 La. 266, 68 South. 605. See, also, City of Shreveport v. F. A. Nejin, No. 22,287, 73 South. 996,[1] and Louisiana State Board, etc., v. Tanzmann, No. 22,087, 73 South. 854,[2] this day decided.

[2, 13] Second. That the act provides for unreasonable search and seizure, without requiring an oath particularly describing the persons or things to be seized, in contravention of article 7 of the state Constitution, and the Fourth Amendment to the Federal Constitution. Article 7 of the state Constitution is in the language of the Fourth Amendment to the Constitution of the United States, and both read:

[1] Ante, p. 785.
[2] Ante, p. 756.

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Act No. 8 of 1915 (Extra Session) reads, in part:

"That any place suspected of being a 'blind tiger' shall be searched by an officer designated in a search warrant and any spirituous, malt or intoxicating liquor above described, found therein shall by such officer, be seized and brought before the court issuing such warrant. The warrant may be issued by any court having power of a committing magistrate upon the filing in said court of an affidavit reciting the fact that affiant believes a certain designated place to be a 'blind tiger,' together with such additional evidence as the court may require, in order to make out a prima facie case. The officer to whom the search warrant is directed shall make his return thereon within twenty-four hours after it is issued and shall bring into court any spirituous, malt or intoxicating liquor hereinabove described, he may have found, together with all persons found in the place where said liquors may have been found."

In a number of the states distinct statutes, known as "search and seizure" laws, have been enacted, to aid in the suppression of the unlawful traffic in liquors, by authorizing proceedings in rem against the illicit property itself.

"These statutes," say the authorities, "are not unconstitutional if they do not authorize unreasonable searches, and if they make due provision for hearing the claims of parties in interest." 23 Cyc. 292. In this state, as we have seen, the law prohibiting the sale of liquor, and that which authorizes the seizure of liquor held for sale as a means of enforcing the prohibition, are embodied in the same statute, and, having held that the means so provided are germane to the object of the statute, we are also of opinion that the purpose in providing such means is reasonable. The complaint, however, is, not that it is unreasonable to authorize the seizure of liquor, as a means of stopping the traffic in that commodity, but that the seizure, as authorized by our statute, is unreasonable, in view

of the requirements of the Constitution on that subject. Counsel for defendant say, in their brief:

"The act totally ignores these constitutional provisions upon which this government is based. It authorizes the issuance of the warrant without exacting a description of the persons to be seized or the property sought to be retained."

The act does not authorize any search for persons, but provides for a search for liquor, held for a purpose prohibited by law, and, incidentally, for the detention of those who may be found at the place when, and where, such liquor is discovered, until it can be ascertained whether they were present as mere bystanders or as participants in the offense, and it provides that the persons and the liquor shall be brought into court within 24 hours.

"At common law, it seems to have been necessary to the sufficiency of a search warrant to command that the goods, together with the person in whose possession they were found when taken should be brought before the magistrate, and, after an examination of the facts, disposed of according to law." 35 Cyc. 1257.

It may be that the provision of the statute, here in question, requiring the bringing into court of all persons found with the liquor, was placed there as a concession to the common law, but the requirement is not directed especially against the present defendant; nor, so far as we are informed by any of the pleadings in the record, has it been enforced against him, or any other person, and, that being so, he discloses no present interest in attacking its constitutionality.

Beyond that, the language, "and particularly describing the place to be searched and the persons or things to be seized," as used in the Constitution, is to be reasonably interpreted. It does not mean that the measurement, in feet and inches, of the lot, or the color of the paint, on the house, constituting the "place," are to be given, but that such "place" is to be designated with sufficient accuracy to prevent the officer from searching the premises of one person under a warrant directed against those of another. Nor does it necessarily mean a minute and detailed description of the property to be seized. The words "particularly describing" are to be differently interpreted as applied in different cases, for while in some cases, the identity of the property is the main issue, in others, its character is the only matter of concern. Thus where the purpose of the search is to find specific property, it should be so particularly described as to preclude the possibility of seizing any other. On the other hand, if the purpose be to seize, not specified property, but any property of a specified character, which, by reason of its character and of the place where and the circumstances under which it may be found, if found at all, would be illicit, a description, save as to such character, place, and circumstances, would be unnecessary and, ordinarily, impossible; as, for instance, where a search is ordered for dies for the counterfeiting of money, or for opium, or gambling devices, or lottery tickets, or intoxicating liquors, alleged to be held in possession unlawfully, and the same is true though the illegality may consist in the intended use rather than the mere possession of the property.

"When the use of certain articles," say the authorities, "although treated as property and employed for lawful purposes, is considered harmful to the welfare of the community they may be forfeited and destroyed under proper statutory provisions, and where an attempt is made to secretly and clandestinely divert them to unlawful purposes, so that ordinary diligence cannot discover such attempt, in order that the law may declare the forfeitures, statutes authorizing searches and seizures have been held proper, and proceedings in rem may be enforced against such articles seized, even without the knowledge and consent of the true owner, and laws which provide for the search and seizure of articles

and other things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, forged instruments, gambling devices, etc., have been upheld by the courts." 35 Cyc. 1268.

In other cases than as thus mentioned, it has been variously held that "goods, wares, and merchandise" is a sufficient description for the purposes of a search warrant (Sandford v. Nichols, 13 Mass. 286, 7 Am. Dec. 151, cited in 35 Cyc. 1267, note); that, "if a description is as particular as the circumstances of the case will ordinarily permit, it is sufficient to satisfy the constitutional requirement" (State v. Markuson, 7 N. D. 155, 73 N. W. 82, same note); that if the warrant direct the seizure of "certain intoxicating liquors," and then, under a videlicet, specifies certain particular kinds, the officer will not be justified in seizing any other kinds than those specified, for here the videlicet limits the general expression, preceding, by what follows (Hallet v. Stevenson, 26 Conn. 428; 23 Cyc. 296, note 66). From which it is to be inferred that, but for the videlicet, the court would have considered "certain intoxicating liquors" to have been a sufficient description.

We find, then, that the statute here in question contemplates a search for "spirituous, malt, or intoxicating liquors," held for illegal disposition; that it requires that the search shall be made under a warrant, to be issued by a competent court to a designated officer, upon an affidavit to the effect that the affiant believes a designated place to be a "blind tiger" (which the statute defines as a place where such liquors are kept to be unlawfully disposed of), "together with such additional evidence as the court may require in order to make out a prima facie case"; and that the officer shall bring into court, within 24 hours, "any spirituous, malt, or intoxicating liquors, hereinabove described, he may have found, together with all persons found in the

place where said liquors may have been found." And we conclude that the search thus authorized is not unreasonable within the meaning of the provision of the state Constitution which defendant invokes. The Fourth and Fourteenth Amendments to the Constitution of the United States, in our opinion, are inapplicable in this case.

[3] Third. That the act authorizes the taking and destruction of private property without due process of law, in violation of article 2 of the state Constitution and the Fourteenth Amendment to the Constitution of the United States, and authorizes the taking of property without compensating the owner thereof. The law upon the question thus presented is well stated as follows:

"The entire business of manufacturing and selling intoxicating liquors is completely within the control of the state, and there is nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether." 6 R. C. L. § 271.

"As has been seen, where property is used in violation of law in maintaining a public nuisance, its destruction, in the exercise of the police power of the state, is not a taking of property for public use, and does not deprive the owner of it without due process of law." Id. § 476.

"Property taken or destroyed for the purpose of abating a nuisance is not taken for public use, and accordingly there is no obligation to make compensation therefor." Id. § 478.

"The courts have generally recognized the right of a state to declare all places where intoxicating liquors are manufactured or sold to be common nuisances, and to provide regulations for their abatement as such, and liquors brought for sale into a district where such sale is prohibited may be summarily seized and destroyed without compensation." Id. § 480.

[4] Fourth. That the act discriminates against persons in "dry" in favor of those in "wet," territory.

The act merely prescribes a rule for the people of those sections of the state who have elected to prohibit the sale of intoxicating liquor, and the rule so prescribed necessarily differs, in so far as the sale of liquor is concerned, from that which obtains where such sale is authorized, since in the one case the

prohibition of the sale is to be enforced, and in the other the privilege of selling is to be regulated as the proper authorities may see fit.

[5] Fifth. That the act in question is a special law and contravenes article 48 of the state Constitution, in that it relates to criminal actions, and violates article 50, in that it was enacted without the notice required by that article.

The statute applies in every organized community in the state where, in the exercise of the right of local option, the people have prohibited the sale of liquor, and is applicable to every other community, in the sense that, should any other choose to prohibit such sale, it will come immediately under its dominion. It is not therefore either a special or a local law within the meaning of either of the articles invoked.

[6] Sixth. That it violates article 49 of the state Constitution, in that it is a partial repeal of a general law, to wit, the law relating to grog and tippling shops, which was of state-wide application, and is now applicable only in wet territory. The law applicable in "wet" territory became inoperative in territory which turned "dry," not by virtue of the act of 1915, but by reason of the votes of the electors exercising the right of local option.

[7] Seventh. In the event the act of 1915 be held constitutional, and in that event only, defendant alleges that section 974 of the Revised Statutes, under which the sentence authorized by that act was doubled, has been repealed by article 159 of the Constitution.

The section and article, respectively, read:

"Sec. 974. The judge shall have the power to sentence any person who may be convicted for a second or third offense to double and triple the penalty imposed by law, and for a fourth offense, the person so convicted may be sentenced to perpetual imprisonment."

"Art. 159. The General Assembly shall grade all misdemeanors and minor offenses against the state and shall fix the minimum and maximum penalties therefor."

The complaint is that if section 974 be applied, the fixing, by Act No. 8 of 1915, of the minimum and maximum penalty (for keeping a blind tiger), as required by the Constitution, must necessarily be ignored, and hence that the section can not be allowed to stand. But that involves a non sequitur, and ignores an elementary canon of construction. The act and the section are laws in pari materia; there is no necessary conflict between them; the one stops where the other begins; they must therefore be construed together; and, so construed, the minimum penalty for keeping a blind tiger is found in the act and the extreme maximum penalty, in case of a second, third, or fourth offense, is found in the section.

[8] Eighth. It is said that, if section 974 has not been repealed, the city court was without jurisdiction, and that defendant was entitled to be tried by a jury.

The matters of the jurisdiction of the city court and of the right to be tried by jury in cases such as this are regulated by the following constitutional and statutory provisions, to wit:

"Art. 9. In all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury: Provided, that cases in which the penalty is not necessarily imprisonment at hard labor, or death, shall be tried by the court without a jury, or by a jury less than twelve in number, as provided elsewhere in this Constitution. * * * Prosecutions shall be by indictment or information; but the General Assembly may provide for the prosecution of misdemeanors on affidavits. * * *

"Art. 96. * * * The General Assembly shall have the power to abolish justice of the peace courts in wards containing cities of more than five thousand inhabitants, and to create in their stead courts with such civil jurisdiction as is now vested in justices of the peace, and with criminal jurisdiction which shall not extend beyond the trial of offenses not punishable by imprisonment at hard labor under the laws of this state, and of violations of municipal and parochial ordinances, and the holding of preliminary examinations in cases not capital."

"Art. 116. * * * All cases in which the punishment may not be at hard labor shall, until otherwise provided by law, be tried by the judge without a jury."

The city court of Shreveport was created by Act 103 of 1898, and its jurisdiction was conferred in, substantially, the language of article 96 of the Constitution. The act further provides that prosecutions shall be by affidavit, and that misdemeanors shall be tried summarily and without juries. Act 29 of 1900, amending Act 103 of 1898, provides for appeals to the district court by persons sentenced to fine or imprisonment, on their giving security, and that, in such cases, the trials shall be de novo and without juries.

In so far as it purports to allow appeals to the district court in cases where the fine actually imposed exceeds $300, or the imprisonment, six months, the act has been decreed unconstitutional. State ex rel. Hart v. Judge, 113 La. 654, 37 South. 546; Id. 113 La. 845, 37 South. 845. It will be seen, therefore, that the power to try defendant, in the manner that he was tried, has been conferred upon the city court by the General Assembly, acting under a direct grant of authority from the Constitution. And as the city court is thus vested with jurisdiction of offenses against the laws of the state, as well as of offenses against the ordinances of the city, there is no reason why R. S. 974 should not apply to it as well as to any court vested with jurisdiction of the offenses to which that section relates.

[9] We now proceed to consider certain bills of exception, which were reserved on the trial:

Bills 2 and 3: Defendant excepted to the overruling of his objections to offers, by the state, of certain records of the city court, to show that he had previously been convicted of the offenses for which he was being tried, his objections being, in part: (1) That no such charge was contained in the affidavit on which the prosecution was based, and that the object of the offer was to prejudice the court against him; (2) that if the object was to support an unsworn statement which had been filed by the district attorney at some time subsequent to the filing of the affidavit, the evidence was irrelevant and inadmissible; (3) that the records offered did not show final convictions, but, to the contrary, showed that appeals had been taken; and that they did not show convictions of the offense for which defendant was on trial.

The court overruled the objections, on the grounds:

"That it considered the statement referred to as a new count against the defendant, and, to all practical purposes, embodied in the affidavit against the accused, and they showed that the defendant had been twice convicted of operating a blind tiger, and this whole charge, including the previous convictions, was sworn to by the Assistant District Attorney, as one charge, and defendant was arraigned on said charge and pleaded not guilty thereto. * * * The court held that the records produced were admissible and were sufficient to establish the prior convictions of operating a blind tiger and that, at least, the production of such records, showing these convictions, imposed upon the defendant the obligation of showing that the appeals in said cases had been successful and the judgments of the city court reversed, which was not done by the defendant."

The "statement" referred to appears in the transcript upon a typewritten slip, distinct from the form upon which the affidavit in inscribed, but is bound (in the transcript) with that form, as though intended to be identified with it. The signature to the affidavit, however, follows closely upon the text, and there is nothing upon its face to indicate any intention to incorporate the contents of the "statement" therein. The affidavit bears date September 13, 1916; the slip bears no date, nor is there anything to show that it was filed, but it is not disputed that it was filed some days after the affidavit.

The transcript nowhere shows that the "statement" in question was verified by oath, and we are of opinion that we should be governed by the record, as it appears in the transcript, and hold that the statement was unsworn.

The act creating the city court (section 6) declares:

"That prosecution of criminal cases before the city court shall be on affidavit stating briefly the nature" of the offense.

In State v. Hudson, 32 La. Ann. 1053, defendant assigned as error:

"That the court cannot condemn him and inflict extraordinary punishment, unless the indictment or information charges, and the state proves, previous convictions for the same offense."

In ruling upon the point, this court said:

"The information does not charge any previous conviction. From a statement of facts, prepared after trial and conviction, we perceive that the judge admits that no evidence was offered to the jury or to him to show previous convictions, but that he took official notice, as it were, of the same as the facts were of record before his court. We do not think that the previous convictions should have been charged in the information, as they were not essential ingredients constituting the offense charged, upon which the jury had to pass, and might prejudice the jury. * * * The state can so inform the judge [of previous convictions] or the judge may, upon his own suggestion, act upon the existence of such facts after verdict, but in either case it is nothing but just that a proceeding should be taken against the defendant before sentence, to show cause why the fact of such previous convictions should not be brought to the knowledge of the court to enable it to exercise its peremptory powers under section 974 of the Revised Statutes. The defendant would then be afforded an opportunity to show, if such be the fact, that the judgments an sentences in the cases referred to were arrested or reversed and annulled, or that he was pardoned."

The sentence which had been pronounced was therefore annulled, and the case remanded for sentence according to the views thus expressed and the law.

In the similar case of State v. Compagno, 125 La. 669, 51 South. 681, the decision thus rendered was categorically overruled, and it was said:

"Where a defendant claims the right to have the crime for which it is sought to convict him fully set forth in the act of accusation, his right to have a full statement cannot be denied to him on the ground that the state treats him with special leniency, and withholds a charge * * * of prior conviction, for the reason that it may prejudice him before the jury. If the averment is essential, it should be made a ground in the affidavit. We are of opinion that it is essential. * * * It enters into and makes part of the last offense. It is an aggrava-

tion which gives rise to an increase of the punishment. * * * In other words, it becomes a part of the second offense. It is the basis of the sentence increasing the punishment. * * * In other jurisdictions it is generally held that the previous offense must be charged, as before mentioned [citing authorities]. * * * It follows that * * * State v. Hudson is overruled."

And the sentence appealed from was annulled and the case remanded, with directions to the trial court to impose sentence in accordance with the statute under which the defendant was prosecuted. See, also, Marr's Cr. Jur. of La. p. 868 and note.

The instant case differs from those cited, in, that the matter of imposing upon him an extra sentence under R. S. 974, was called to defendant's attention during the trial. But he then objected that he was not charged with the prior offenses sought to be proved and his objections should have been sustained, as the law requires that prosecution in the city court "shall be on affidavit," and there was no affidavit charging him with an offense calling for the extra penalty authorized by that section. The case would have been the same if evidence of three convictions had been admitted, thus subjecting defendant to liability to perpetual imprisonment, in which event it would unquestionably have been his right to be fully informed upon that subject, in the manner required by law; and had he been tried before a jury, to have the jury determine all the facts upon which such a sentence could be imposed.

As the matter stands, the judge, who had the power to convict as well as to sentence, heard evidence which was inadmissible, and though we do not, for a moment, question either the ability or the singleness of purpose and high sense of judicial obligation of our learned brother, we cannot but feel that the evidence thus heard was in its nature so prejudicial to the interest of the defendant, that the conviction, as well as the sentence, should be set aside.

Bills 4 and 5:

[10, 11] After the evidence had been heard, and before the argument, defendant submitted to the court the following propositions of law for its guidance in the rendition of judgment, to wit:

"To convict the accused of operating a blind tiger, as denounced by Act No. 8 of 1915, it is necessary that the proof should show, beyond a reasonable doubt, that on or about the date alleged, he kept liquors for sale, barter, exchange or habitual giving away, and not as to what might have occurred weeks prior thereto."

"The law does not denounce the possession of whisky or other intoxicating liquors; a man may keep on hand any quantity of such liquors without violating any law, and the mere possession of such liquors does not even make out a prima facie case under the charges preferred against him."

The bill reserved in each instance contains a recital to the following effect, to wit:

Which legal proposition was applicable to the facts, in that the sole proof produced by the prosecution was that three gallons of whisky were found, after a careful search of defendant's residence, by the police, and no evidence whatever was produced that said liquor was kept for sale, barter, exchange, or habitual giving away.

And the ruling of the court in each case was, substantially, as follows:

"The court refused to be guided by said propositions of law, for the reason that, in its opinion, the possession of three gallons of whisky in various sized bottles, and where a man was found drinking, as was the case in this instance, is, at least, a circumstance against the accused, and that defendant should offer an explanation if he has any, which he refused to do."

It was competent for the trial judge to determine the weight that he would give to any circumstance disclosed by the evidence, but no matter how many circumstances may have been thus disclosed, the defendant could not have been legally convicted unless the evidence, considered as a whole, established, beyond a reasonable doubt, that he was guilty, as charged.

The possession of liquor in "dry" territory is lawful or unlawful, as the intended disposition of it is lawful or unlawful, and the inference suggested to the mind of a trial judge, by the circumstances connected with the possession, in one case, may be different from that suggested in another case. Evidence of such possession is unquestionably admissible in a prosecution for keeping liquor for sale, barter, etc., and the effect of that evidence upon the mind of the trial judge is a matter for him to determine. The proposition above quoted is therefore too broadly stated. Both the rulings complained of were invoked and made agreeably to the provisions of Act 93 of 1916, which so provides in order to give defendants, tried without juries, opportunities to bring up for review questions of law which could not otherwise well be reviewed; and we find that there was reversible error in the ruling upon the proposition first above stated, but do not feel at liberty to review the ruling on the second proposition, because to do so would be to assume the determination of the effect that should be given to admissible evidence.

Other propositions by which the judge refused to be guided, and which are here insisted on, are that:

"Where persons are present at a place suspected of being a blind tiger and are not put on the stand by the prosecution, although said witnesses are in the jurisdiction of the court, the presumption is that the evidence of such persons, or bystanders, is against the prosecution."

That:

"In order to convict the accused of keeping a blind tiger, the circumstance that he was found in the possession, or that whisky was found in his home, amounting to three gallons, is not, of itself, sufficient, but such circumstance must be strengthened and fortified by testimony that such liquor was kept for sale, barter, or exchange, or habitual giving away."

[12] The state, in fairness to the accused, should present its case in the opening, but we know of no rule which requires that, in so doing, it should call to the stand any other witnesses that such as the prosecuting officer may consider most available for that purpose, or which raises any presumption that those whom he does not call would give

unfavorable testimony to the prosecution. If, in the instant case, the defendant indulged in any such presumption, it was open to him to call the witnesses to whom the bill refers.

As we have already stated, the amount and character of admissible testimony which a trial judge may require, or which may satisfy his mind, in a criminal case, is a matter for him, and not this court, to determine.

For the reasons thus assigned in our consideration of defendant's bill of exception Nos. 2, and 4, it is ordered and adjudged that the conviction and sentence appealed from be annulled and set aside, and that this case be remanded to be further proceeded with according to law and to the views expressed in the foregoing opinion.