## STATE *vs*. NORMAN MARKUSON.

Opinion filed October 28th, 1895.

**Writ of Error in Contempt Proceedings.**

A judgment imposing a fine and imprisonment for contempt of court under section 13, Ch. 110, Laws 1890, may be reviewed by writ of error, and upon such review this court will consider (1) whether or not the alleged act of contempt was in law a contempt of court; (2) whether or not there is any evidence tending to establish the commission of the act; and (3) whether or not the court had jurisdiction to pronounce the judgment.

**Affidavit for Attachment—When Sufficient.**

An affidavit made as the basis of an order for attachment for contempt, in violating an injunctional order theretofore granted in an equity case brought to abate a nuisance, is not defective because it does not allege in terms that the action is still pending at the time of making the affidavit, where it does allege that "said injunctional order so made as aforesaid has not been dissolved or modified."

**Contempt not Triable by Jury.**

In contempt proceedings under the statute above mentioned, the party charged with the contempt is not entitled to have the charge tried to a jury.

**Legislature can Prescribe Minimum Punishment for Contempt of Court.**

Since the minimum punishment found in said statute in no manner tends to destroy or impair the inherent power of courts of general jurisdiction to enforce obedience to their orders by contempt proceedings, *held* a valid exercise of legislative power.

Error to District Court, Barnes County; *Rose*, J.

Norman Markuson was convicted of contempt of court, and brings error.

Affirmed.

*Crum & Hanson* and *G. K. Andrus*, for plaintiff in error.

A writ of error is the proper remedy by which to review a judgment for contempt. Sections 7499, 7500 and 7502, Comp. Laws; *State* v. *Knight*, 54 N. W. Rep. 413; *State* v. *Sweetland*, 54 N. W. Rep. 416; *Gandy* v. *State*, 14 N. W. Rep. 146; *Myers* v. *State*, 22 N. E. Rep. 43; *In re Smith*, 7 N. E. Rep. 685; *Wyatt* v. *People*, 28 Pac. Rep. 962; *Cooper* v. *People*, 22 Pac. Rep. 796; *State*

*v. Davis*, 2 N. D. 461. The appellate court will review the testimony in contempt cases, to determine whether the testimony showed a contempt, or jurisdiction. *Ex parte Rowe*, 7 Cal. 176; *Romeyn* v. *Caplis*, 17 Mich. 454; *Wyatt* v. *People*, 28 Pac. Rep. 962; *Peo.* v. *Kelley*, 24 N. Y. 74; *State* v. *District Court*, 62 N. W. Rep. 832; *Granholm* v. *Sweigle*, 3 N. D. 476; *In re Pryor*, 26 Am. Rep. 747; *Storey* v. *People*, 22 Am. Rep. 158; *Ex parte Grace*, 79 Am. Dec. 529; *McCredie* v. *Senior*, 4 Paige 378. In order to give the court jurisdiction every jurisdictional fact must be set forth in the affidavit upon which the attachment for contempt issues. *State* v. *Sweetland*, 54 N. W. Rep. 415; *Bachelder* v. *Moore*, 42 Cal. 412; *Wyatt* v. *People*, 28 Pac. Rep. 961; *Thomas* v. *People*, 23 Pac. Rep. 326; Ralpalje on Contempts, § 94.

*J. F. Cowan*, Atty. Gen'l; *Herman Winterer*, States Atty., and *Chas. A. Pollock*, for defendant in error.

A judgment rendered in a contempt proceeding is not within the statute, and subject to review by writ of error, and in the absence of express statutory provision therefor the writ of error will not lie. *State* v. *Galloway*, 98 Am. Dec. 404; 5 Crim. L. Mag. 647; Rapalje Contempt, § 13; *People* v. *Owens*, 28 Pac. Rep. 871; *Land and Water Co.* v. *Sup. Ct.*, 28 Pac. Rep. 813; *Ex parte Tyler*, 149 U. S. 180, 13 S. C. Rep. 77. The infliction of punishment for contempt of court is not an infringement of the constitutional guaranty of jury trial. 4 Blacks. Com. Ch. 20; 3 Am. & Eng. Enc. L. 721; 5 Crim. L. Mag. 515; *Garrigus* v. *State*, 93 Ind. 239; *In re Terry*, 128 U. S. 289; *Eilenbecker* v. *Dist. Court*, 134 U. S. 31; *In re Debs*, 158 U. S. 594; *State* v. *Doty*, 90 Am. Dec. 671; *Neal* v. *State*, 50 Am. Dec. 209; *State* v. *Becht*, 23 Minn. 411.

BARTHOLOMEW, J. On the 12th day of December, 1894, an action in equity entitled "The State of North Dakota *ex rel. Martin H. Wilberg* v. *Norman Markuson*" was commenced by the state's attorney of Barnes County under the provisions of section 13, Ch. 110, Laws 1890, commonly known as the "Prohibitory Law." The relief asked was that certain premises occupied by

the defendant in that action be declared a nuisance and abated as such. The usual preliminary injunction was granted, restraining the defendant, his agents, servants, and employes, from selling or keeping for sale any intoxicating liquors on said premises during the pendency of the action. The papers in the case—summons, complaint, injunctional order, affidavit for search warrant, and search warrant—were served upon the defendant on December 29, 1894. On June 11, 1895, the said state's attorney of Barnes County by affidavit brought to the attention of the court the fact that the defendant had violated and was violating the terms of the temporary injunction, in that he had sold intoxicating liquor on said premises, and asked an order of attachment against the body of the defendant, and that he be arrested and brought before the court to answer for contempt of court. The order was granted and the defendant was produced in court, and on June 28, 1895, a hearing was had, and evidence introduced by both the state and the defendant. The court found the defendant in contempt, and adjudged him to be imprisoned in the county jail of Barnes County for 90 days.and pay a fine of $200,—the minimum punishment permissable under the statute. This judgment has been brought into this court for review upon a writ of error.

The first point to be considered relates to procedure. The defendant in error contends that contempt proceedings are not reviewable on writs of error. The cases are in conflict on this point. The briefs of counsel in this case furnish long lines of authorities from eminent courts on both sides of the question. At common law the position of defendant in error was doubtless correct, but in this country (particularly in the Western states, and under statutory provisions) the opposite practice largely prevails, in what are known as "criminal contempts" as distinguished from "civil contempts,"—a distinction which was clearly pointed out and discussed by Corliss, C. J., in *State* v. *Davis*, 2 N. D. 461, 51 N. W. 942, and which we need not further discuss at this time. Proceedings in criminal contempts were held properly

reviewable by writ of error in *Gandy* v. *State*, 13 Neb. 445, 14 N. W. 143; *Myers* v. *State*, 46 Ohio St. 473, 22 N. E. 43; *In re Smith*, 117 Ill. 63, 7 N. E. 683; *Cooper* v. *People*, 13 Colo. 337, 22 Pac. 790; *Wyatt* v. *People*, 17 Colo. 252, 28 Pac. 961; and *State* v, *Knight*, 3 S. D. 509, 54 N. W. 312. The South Dakota statutes pertaining to writs of error are identical with the statutes of this state. In *New Orleans* v. *Steamship Co.*, 20 Wall. 387, the Federal Supreme Court, speaking through Justice Swayne, said: "Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were an indictment for perjury committed in a deposition read at the hearing;" citing in support of the proposition Crosby's Case, 3 Wils. 188; Williamson's Case, 26 Pa. St. 24; and *Ex parte Kearney*, 7 Wheat. 41. See, also, *Fischer* v. *Hayes*, 6 Fed. 63. We think that under the statute under which the fine and imprisonment were imposed in the case at bar the proceedings were so far criminal in their nature that this judgment is peculiarly a judgment in a criminal case. The statute requires that the contempt "processes shall run in the name of the State of North Dakota," and "the accused may plead in the same manner as to an indictment, in so far as the same is applicable." It thus appears the contempt proceedings under this statute do not follow the title of the main case, but are distinct and separate, and carried forward entirely by the state for punitive purposes solely, and the judgment of the court is the final determination of the proceedings in that court. Section 7499, Comp. Laws, is as follows: "Either party may sue out a writ of error to remove to the Supreme Court, and therein to re-examine and review the record and bills of exception in a criminal action, upon matters of law decided in the District Courts, in manner as prescribed in this chapter." Section 7502 reads: "The writ may be sued out by the defendant: (1) From a final judgment of conviction." Without further examination of authorities or elaboration, we hold that contempt proceedings in this case may be reviewed by writ of error. It is proper to add

that the question will soon cease to be of any importance whatever in this state. The Revised Codes, which will go into effect at an early day, specifically provide the manner in which contempt proceedings may be reviewed. This court cannot, however, in a proceeding of this character, review any disputed question of fact. The unanimous voice of authorities forbids, unless express statutory authority be given. See *State* v. *McKinnon*, 8 Or. 487; *Romeyn* v. *Caplis*, 17 Mich. 454; *Wyatt* v. *People, supra*; *Cooper* v. *People, supra*; *Ex parte Smith*, 53 Cal. 204.

But it is conceded that if a writ of error be proper in this case the appellate court may inquire (1) whether or not the act alleged to have been committed constitutes a contempt of court; (2) whether or not there is any evidence that the act was committed; (3) whether or not the court had jurisdiction of the contempt proceedings, and herein whether or not the affidavit which initiated the contempt proceedings contained the necessary jurisdictional averments, and whether or not the statute under which the court proceeded was a valid constitutional enactment.

The first inquiry is answered by section 13 of the prohibition law, which expressly declares that any person violating the terms of any injunction granted in an equity case shall be punished for contempt. The violation of an injunctional order, was, however, equally a contempt without the statute. The statute adds nothing to it as a contempt.

It is strenuously urged by plaintiff in error that there is an entire absence of evidence establishing the commission of the act constituting the contempt. A perusal of the record leads us to the opposite conclusion. The particular point made is that the restraining order prohibited the defendant from selling intoxicants upon certain premises described therein, and that the evidence entirely fails to establish a sale upon such premises. We have carefully read the record, and we find evidence tending to support the ruling of the trial court.

Under the third head of inquiry open to this court; it is claimed that the affidavit of the states's attorney upon which the con-

tempt proceedings were based failed to state facts giving the court jurisdiction to proceed as for contempt, in that it did not state that the equity action in which the injunctional order was made was still pending when the contempt affidavit was made. It is conceded that the affidavit must contain all the allegations necessary to give the court jurisdiction. In other words, it must be such that, if its allegations be established by proof, judgment may follow. Nor can it be aided by presumptions or intendments. Still we think the affidavit sufficient. After setting forth the institution of the original action, and the issuance and service of the injunctional order, and its violation, the affidavit continues: "That said injunctional order so made as aforesaid has not been dissolved or modified." This could not be true unless the original case was still pending, and is equivalent to a direct allegation of that fact.

We now reach the more difficult points in this case. When the plaintiff in error appeared in court to answer to the contempt proceedings the following record was made: "The defendant objects and excepts to the proceeding with the trial of this case under section 13 of Ch. 110 of the Session Laws for the year 1890, as the same abridges the right given to him under section 7 of article 1 of the constitution of the State of North Dakota; and the defendant now demands the right to trial by jury under the accusation laid before him. The demand is refused by the court, to which ruling of the court the defendant by his counsel duly excepts." Under this broad demand and refusal the plaintiff in error has the right in this court to insist upon a reversal if, upon any view of the case, he was legally entitled to a trial by jury. Section 13 of said act contained the following: "All places where intoxicating liquors are sold, bartered or given away, in violation of any of the provisions of this act, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of this act, are hereby declared to be common nuisances; and if the existence of such nuisance be

established, either in a criminal or equitable action, upon the judgment of a court or judge having jurisdiction, finding such place to be a nuisance, the sheriff, his deputy or under sheriff, or any constable of the proper county or marshal of any city where the same is located, shall be directed to shut up and abate such place, by taking possession thereof, if he has not already done so under the provision of this act by taking possession of all such intoxicating liquors found therein together with all signs, screens, bars, bottles, glasses and other property used in keeping and maintaining such nuisance, and such personal property so taken possession of shall, after judgment, be forthwith publicly destroyed by such officer, and the owner or keeper thereof shall, upon conviction, be adjudged guilty of maintaining a common nuisance, and shall for the first offense be punished by a fine of not less than two hundred (200) dollars, nor more than $1.000, and by imprisonment in the county jail of not less than ninety days or more than one year, and for the second and every successive offense be punished by imprisonment in the state's prison for a period not exceeding two years and not less than one. * * * The attorney general, his assistant, state's attorney, or any citizen of the county where such nuisance exists, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action in the usual manner of granting injunctions, except that the affidavit or complaint, or both, may be made by the state's attorney, attorney general or his assistant upon information and belief; and no bond shall be required. * * * Any person violating the terms of any injunction granted in such proceedings shall be punished for contempt, for the first offense by a fine of not less than two hundred (200) dollars nor more than $1,000, and by imprisonment in the county jail not less than ninety days nor more than one year, and for the second and every successive offense of contempt be punished by imprisonment in the state's prison for a period not exceeding two years and not less than one in the discretion of the court or judge

thereof. * * *" It will be noticed that section 13 declares all places where intoxicating liquors are sold or kept for sale to be common nuisances. The power of the legislature to thus place a ban upon a traffic recognized as lawful by the common law and provide for its suppression has been abundantly recognized by the courts as a proper exercise of the police power of the state. See State v. Fraser, 1 N. D. 425, (and cases cited on page 430) 48 N. W. 333; also Eilenbecker v. District Court, 134 U. S. 31, 10 Sup. Ct. 424. And, the law having declared all such places to be common nuisances, it follows necessarily that the inherent powers of a court of equity may be invoked in any proper manner to inquire into the existence of such nuisance, and, if found to exist, to abate the same. And as incident to the main purpose the court may by injunction restrain the continuance of the nuisance pending the litigation, and any violation of such injunction will subject the offender to punishment for contempt of court. It is true that the statute authorizes the court to take these successive steps, but the power of the court so to do does not come from the statute. That power exists in all its force, and without statutory aid, the moment the law declares all places where intoxicating liquors are sold or kept for sale to be common nuisances. The abatement of nuisances was one of the earliest recognized, as it is one of the most important, offices of equity jurisprudence. The power to punish for contempt is inherent in every court of record, and is as old as the common law. It was confirmed by Magna Charta, and has been uninterruptedly exercised in England and in this country to the present day. It is a power indispensably necessary to the very existence of courts, and without which they would be powerless to enforce their orders, mandates, and decrees, or to protect from indignity and wanton insult the sovereignty which they represent. If they have not this power, then they are,—in their impotency,—of all conceivable governmental instrumentalities, the most contemptible. This is elementary; but see Rap. Contempt, 1, and cases cited. Nor is this power to punish for contempt in any manner affected by the fact that the

act which constitutes the contempt may also be a substantive crime,—for instance, an assault. Punishment by the court of the contempt does not preclude the state, in a proper action, from punishing the crime. In law the two things are entirely distinct, although one act embodies both. *Arnold* v. *Com.*, 80 Ky. 300; *Foster* v. *Com.*, 8 Watts & S. 77; 2 Bish. Cr. Law, § 250. In this country, under that perhaps universal constitutional guaranty that the right of trial by jury shall remain inviolate, it has often been urged that punishment for contempt of court could not be inflicted without the intervention of a jury. But the claim has never been admitted by the courts, on the ground that no such proceeding was known to the common law; that under that law punishment was always inflicted by the court in its discretion, and that the trial by jury for contempt was unknown, except in cases of indictment; and that the trial by jury which the citizen might demand as a constitutional right was the jury trial as it existed at common law at the time of the adoption of the constitution. Among the many cases that have so held, we cite *Ex parte Grace*, 12 Iowa, 208; *Neal* v. *State*, 9 Ark. 259; *State* v. *Matthews*, 37 N. H. 450; *Ex parte Terry*, 128 U. S. 289, 9 Sup. Ct. 77; *Eilenbecker* v. *District Court*, 134 U. S. 31, 10 Sup. Ct. 424.

Learned counsel for plaintiff in error do not particularly dissent from the propositions thus far enunciated upon this branch of the case. But as we understand them they build an argument of this character: At the time of the adoption of our constitution, section 7 of which declares "the right of trial by jury shall be secured to all and remain inviolable," there existed upon our statutes a provision (section 6402, Comp. Laws) which declared, "Every person guilty of any contempt of court of either of the following kinds is guilty of misdemeanor;" and among the contempts enumerated is that of willful disobedience to an order of court lawfully made. That this section constituted the particular contempt here under review a misdemeanor. By section 6213, Comp. Laws, then and now in force, a misdemeanor was punishable by imprisonment in the county jail not exceeding one year,

or by fine not exceeding $500, or by both such fine and imprison-
ment. That prior to the adoption of the constitution contempts
were punished without a jury trial. That section 6204, then and
now in force, defines a felony to be a crime which is or may be
punished by death, or imprisonment in the penitentiary. That
section 13 of Ch. 110 of the Laws of 1890, in declaring that "any
person violating the terms of any injunction granted in such
proceedings shall be punished as for contempt for the first
offense by a fine of not less than two hundred dollars nor more
than one thousand dollars and by imprisonment in the county
jail not less than ninety days nor more than one year, and for the
second and every successive offense of contempt be punished by
imprisonment in the state's prison for a period not exceeding two
years and not less than one, in the discretion of the court or
judge thereof," made the second offense a felony; and that at
the time of the adoption of the constitution no person could be
punished for a felony except upon a trial by jury, and that conse-
quently no person can now be punished for a second offense
under the statute except upon a trial by jury. Therefore the
statute, in so far as it relates to the second or any subsequent
offense, violates section 7 of the constitution, and that the
punishments prescribed for the first and second offenses are so
interdependent that neither can stand if the other be held uncon-
stitutional. We may concede the position; still we think that this
portion of the argument of plaintiff in error against the constitu-
tionality of the law proceeds upon a wrong theory. At common
law contempts were indictable. Rap. Contempt, § 4; 2 Bish. Cr.
Law, § 250 *et seq.* The statutes of the late Territory of Dakota,
in force since the early days of the territory, and still in force in
this state as section 6201, Comp. Laws, provide that "no act or
omission shall be deemed criminal or punishable except as
provided or authorized by this Code." By this broad provision
all common law offenses were swept away, including of course
the indictable offense of contempt. For that reason the legisla-
ture enacted section 6402, Comp. Laws, which declared, "Every

person guilty of any contempt of court of either of the following kinds, is guilty of misdemeanor." This act restored indictable contempts. But we do not think it was intended thereby to in any manner interfere, or that it did in any manner interfere, with the power of the courts to punish for contempt. The fact that contempts were indictible at common law never was held to take from the courts the power to punish summarily. Of course, where indictment was found for contempt it could only* be tried by a jury. The same conditions existed under the statute. A party guilty of one of the enumerated contempts of court could be indicted or informed against therefor, and the trial upon such indictment or information must be had before a jury, and the punishment must be such as may be imposed for a misdemeanor. But the fact that the party is liable to be thus proceeded against in no manner impairs the power of the court to punish the contempt summarily; and when so punished the amount of punishment rests in the discretion of the court, uncontrolled by the statute which prescribes the punishment for misdemeanors, and limited only by the constitutional provision against cruel and unusual punishments. It follows, then, that at the time of the adoption of our constitution a court might punish for contempt, without the intervention of a jury, in an amount greater than the punishment prescribed for a misdemeanor, so far as any statutory limitation was concerned, and the statute under consideration gives the court no greater power; hence it does not deprive plaintiff of any right of trial by jury that existed at the time of the adoption of the constitution. We hold that in no case when a party is brought by order of attachment to the bar of the court, to answer to a charge of contempt, has the accused the legal right to have the charge tried by a jury. Nor do we feel at liberty to say in this case that it is the purpose and effect of the statute to punish for a substantive offense under the guise of punishing for contempt. It is among the highest duties of courts to jealously guard the constitutional rights of the citizen from all legislative encroachments, however stealthily, or under whatever

cover, or by whatsoever name, the same may be made. *Boyd* v. *U. S.*, 116 U. S. 616, 6 Sup. Ct. 524; *In re Debs*, 15 Sup. Ct. 900. It is true the punishment prescribed may be very severe,—more severe than the courts ordinarily, or perhaps ever, in this age, inflict of their own volition in criminal contempt cases. But one of the prime objects of punishment for contempt is to enforce and insure obedience to the lawful orders of the court. It is notorious that courts are loath to punish summarily disobedience to their own authority. They do so only when the disobedience is clear and flagrant. "As courts in punishing contempts are dealing with cases which concern their own authority and dignity, and which are likely to suggest, if not excite, personal feelings and animosities, the case should be plain before they assume the authority." Cooley, Const. Lim. (5th Ed.) note to page 390, and for the same reasons courts are as a rule very lenient in fixing the quantum of punishment. We are not prepared to say that the efforts that have been put forth by a more highly developed and awakened civilization for the last half century to suppress the liquor traffic have not demonstrated that obedience to an order restraining the keeping of a place for the sale of intoxicating liquors cannot be coerced by the ordinary fines that courts feel warranted in inflicting for violations of injunctional orders. It may be that the profits of the prohibited traffic are such that the dealer could well afford to pay an occasional fine of such a character, and yet find great profit in violating the order of the court. If this be true,—and we think it is,—it might then be highly proper for the legislature, finding the courts in this delicate position, to step forward and assume the responsibility by requiring the courts to inflict such punishment as will unmistakably enable them to enforce obedience in these as well as in other cases. Such an act confers no additional powers upon the courts, but it may vastly strengthen them in exercising a power that they already possess; and as the legislative action in no manner tends to destroy or impair the powers of the court to enforce obedience to its orders by contempt proceedings, we can see no valid

objection to it. There is no force in the suggestion of counsel that to recognize this legislative right gives the legislature power to force a court to imprison a man for life for contempt of court, and without intervention of a jury. There still remains the all sufficient constitutional guaranty against cruel and unusual punishments. No court would inflict or enforce any such punishment. It should be remarked in passing, however, that no punishment can be considered cruel or unreasonable which is barely sufficient to accomplish the object for which it is inflicted. This court does not intend by this this opinion to in any manner recognize the power of the legislature to so regulate either the procedure or punishment in contempt cases as to destroy or materially impair the inherent right of courts of general jurisdiction to punish for contempt.

We find no error in the record, and the judgment below is affirmed. All concur.

WALLIN, C. J. (concurring.) The summary power vested in all judicial tribunals to punish contempts of their proper authority, while it is inherent and necessary, is nevertheless arbitrary in its character; and in this country, at least, the decided trend of current authority is to regulate the exercise of such power by statutes passed for that purpose. While there is some conflict in the cases, the better opinion is that the lawmaking branch of the government may primarily regulate the procedure, and also prescribe the penalties, for contempts of court. But the rule of legislative control is never announced, as to constitutional courts, without stating the necessary limitation which goes with the rule, namely, that the legislature cannot either destroy or substantially impair the inherent power vested in such courts to punish contempts of their authority by summary methods. The constitutional courts hold in reserve the implied power to annul any legislative enactment which seeks to deprive them of the authority necessary to the discharge of their constitutional functions. Such power is inherent, and founded on the right of self-protection. *State* v. *Frew*, 24 W. Va. 416; *State* v. *Mc-*

*Claugherty,* (W. Va.) 10 S. E. 407; *Hughes* v. *People,* 5 Colo. 436; *Ex parte Robinson,* 19 Wall. 505; *Anderson* v. *Dunn,* 6 Wheat. 204; *People* v. *Wilson,* 64 Ill. 195; *Batchelder* v. *Moore,* 42 Cal. 415; *Wyatt* v. *People,* (Colo.) 28 Pac. 961; *Arnold* v. *Com.,* 44 Am. Rep. 480. I think the statute under which the punishment was inflicted in this case does not destroy or substantially impair the inherent power of the District Court to punish contempts of its authority. On the contrary, the statute obviously reinforces such authority. With the expediency of such enactments the courts have nothing to do. I am authorized by my associate, Judge Corliss, to say that he agrees with the views that I have above expressed.

(64 N. W. Rep. 934.)

NOTE—See *State* v. *Kerr,* 3 N. D. 523 and note.