## STATE OF NORTH DAKOTA, Respondent, v. FRANK FINLAY-SON, Appellant.

### (170 N. W. 910.)

**Jury trial — contempt under prohibition.**

1. In a contempt proceeding under § 10,118, Comp. Laws 1913 (the prohibitory law), the party charged with contempt is not entitled to a trial by jury. State v. Markuson, 5 N. D. 147, 64 N. W. 934, id. 7 N. D. 155, 73 N. W. 82, reaffirmed.

**Jury — contempt — constitutional rights.**

2. One charged with such contempt of court is not entitled to a jury trial as a matter of right. And § 10,118, Comp. Laws 1913, providing for trial by the court, without a jury, on an inquiry for contempt, does not contravene the constitutional provisions relating to a trial by jury.

**Procedure in trial for contempt — under prohibition law — provisions of Code of Civil Procedure not applicable.**

3. The procedure in contempt cases arising under the prohibitory law of the state is governed by the special provisions founded in such law, and the provisions of the Code of Civil Procedure relating to contempts in general do not govern in contempt cases arising under the prohibitory law.

**Contempt — sufficiency of affidavits.**

4. For reasons stated in the opinion, the affidavits on which the contempt proceeding is based are *held* sufficient and the acts based thereon are sustained.

**Violation of injunction.**

5. For reasons stated in the opinion it is *held* that the trial court did not err in holding the injunctional order, which defendant was charged with having violated, to be in force.

**Contempt — Statute of Limitations.**

6. For reasons stated in the opinion it is *held* that the contempt charged is not barred by the Statute of Limitations.

**Contempt proceedings — former conviction.**

7. In an affidavit filed as a basis for a warrant of attachment in a contempt proceeding under the prohibitory law of the state wherein the defendant is

charged with contempt as a second offense, the former conviction need not be set forth at length, but a brief allegation of such conviction is sufficient.

Opinion filed November 4, 1918. Rehearing denied February 4, 1919.

Appeal from the District Court of Burleigh County, *Coffey,* Special Judge.

The defendant, Frank Finlayson, was convicted of criminal contempt for having violated an injunctional order which enjoined him from maintaining a liquor nuisance, and appeals from the judgment.

Affirmed.

*Theodore Koffel,* for appellant.

In a criminal proceeding the defendant is entitled to all the rights and benefits provided for in the trial of criminal cases and entitled to a trial by jury. N. D. Comp. Laws, §§ 8184, 10,117, 10,119; N. D. Const. §§ 7, 13, art. 1; Fed. Const. Amendment, art. 5; Barry v. Truax, 13 N. D. 131, 99 N. W. 769; Smith v. Kunert, 17 N. D. 120, 45 N. W. 76.

Statements made on information and belief not sufficient in affidavit on which criminal prosecution is based. Keappler v. Bank, 8 N. D. 411, 79 N. W. 871; State v. M'Gahey, 12 N. D. 535, 97 N. W. 865; State v. Root, 5 N. D. 487, 57 N. W. 590; State v. Harvey, 16 N. D. 151, 112 N. W. 52.

*Wm. Langer,* Attorney General, and *F. E. McCurdy,* State's Attorney, for respondent.

CHRISTIANSON, J. In July, 1915, an equitable action was commenced by the state's attorney of Burleigh county, against the defendant, Frank Finlayson, and one John B. Hoagland, under the provisions of the prohibitory laws of this state for the purpose of abating a certain common nuisance which it was alleged that the defendant, Frank Finlayson, was keeping and maintaining on lots 20 and 21 of block 41 of the original town site of the city of Bismarck:

The complaint was in the usual form, and prayed the usual temporary injunction, which was issued, restraining the defendant, his agents, attorneys, and servants, until the further order of the court, from using or permitting the premises in question to be used "as a

place where intoxicating liquors are or may be sold, bartered, or given away as a beverage, or a place where persons are or may be permitted to resort for the purpose of drinking intoxicating liquors as a beverage; or a place where intoxicating liquors are kept for sale, barter, or delivery, in violation of law." The papers in the case—summons, complaint, injunctional order, affidavit for search warrant, and search warrant—were served upon the defendant on August 28, 1915. In April, 1917, the then state's attorney of Burleigh county by affidavit brought to the attention of the court the fact that the defendant, Frank Finlayson, has violated and was violating the terms of the temporary injunction, in that he had sold intoxicating liquors on said premises, and had continued to keep a place thereon where persons were permitted to resort and did resort for the purpose of drinking intoxicating liquors as a beverage.

The affidavit of the state's attorney recited a former conviction for contempt under the same statute, and asked that a warrant of attachment issue, and that defendant be arrested and brought before the court to answer for contempt of court. The state's attorney's affidavit was accompanied and corroborated by the affidavits of F. L. Watkins, Frank Toron, and Anton Melum. Upon these affidavits an attachment for contempt was issued against the defendant, and he was brought before the court.

Upon being arraigned, the defendant moved that the attachment be set aside and quashed. The motion was denied, and the court proceeded to hear the matter. Evidence was introduced by both the state and the defendant. The court made findings of fact and conclusions of law against the defendant, and judgment was pronounced thereon, declaring defendant guilty of contempt of court, as of a second offense, and sentencing him to imprisonment in the penitentiary for a term of two years. The case comes to this court on defendant's appeal from the judgment. No statement of the case was settled, and no question is raised as to the sufficiency of the evidence to sustain the findings, or the sufficiency of the findings to support the judgment.

Appellant's first contention is that § 10,118, Comp. Laws 1913, under which defendant was convicted and sentenced, is unconstitutional for the reason that it denies to one proceeded against thereunder a trial by jury. The question raised is not a new one in this jurisdic-

tion. In State v. Markuson, 5 N. D. 147, 64 N. W. 934 (decided October 28, 1895), this court, after a thorough consideration, held that, "in contempt proceedings under the statute above mentioned, the party charged with contempt is not entitled to have the charge tried to a jury." The principle was reaffirmed in State v. Markuson, 7 N. D. 155, 73 N. W. 82, wherein a judgment sentencing the defendant to imprisonment in the penitentiary for contempt of court, as of a second offense, was affirmed. These former decisions are a complete answer to appellant's contention in this case, and we shall refrain from entering into any discussion of the question further than to say that the principle announced in such former decisions has been accepted as the settled law in this state for more than twenty years, and meets with our approval, and has the support of the authorities. See Woollen & Thornton, Intoxicating Liquors, § 1232; Joyce, Intoxicating Liquors, § 612; 9 Cyc. 47; 4 Enc. U. S. Sup. Ct. Rep. 539.

Appellant also asserts that the proceedings against him were irregular; that the judgment should be reversed, because he was not served with a copy of the warrant of attachment and the affidavits on which it was based; and that no written interrogatories were filed "specifying the facts and circumstances of the offense charged against him." In short appellant argues that the contempt proceedings in the case at bar are governed by art. 3, chap. 35 (§§ 8181–8201), Comp. Laws 1913, and cites Noble Twp. v. Aasen, 10 N. D. 264, 86 N. W. 742, in support of the proposition that under these provisions one being prosecuted for contempt, unless he admits the offense charged, is entitled to have interrogatories filed "specifying the facts and circumstances of the offense charged against him," and that the right to have such interrogatories filed is not waived by mere silence or failure to object to the proceedings on the ground that none have been filed.

The case cited does not support appellant's contention. On the contrary the holding in that case is expressly restricted to contempt cases properly triable under the provisions of the Code of Civil Procedure relating to contempts, and the court specifically disclaimed any intention of holding those provisions applicable to contempt proceedings initiated under the provisions of the state prohibitory law. And in the case of State ex rel. Morrill v. Massey, 10 N. D. 154, 86 N. W. 225 (decided contemporaneously with Noble Twp. v. Aasen), the

court expressly stated that the procedure in contempt proceedings for violation of injunctions issued under the state prohibitory law was governed by the special provisions found in the prohibitory law, and that the general procedure in contempt cases prescribed by the Code of Civil Procedure is not applicable to contempt proceedings under the prohibitory law. In this connection it is well to note that the state prohibitory law expressly provides that "in contempt proceedings arising out of the violation of any injunction granted under the provisions" of such law, "the defendant may be required to make answer to interrogatories, either written or *oral,* as in the discretion of the court or judge may seem proper." Comp. Laws 1913, § 10,118.

Appellant also assails the affidavits which formed the basis for the warrant of attachment. It is asserted that the affidavits are evasive and indirect, and do not set forth facts sufficient to constitute contempt. As already stated, there were four affidavits filed. The affidavit of the state's attorney, McCurdy, stated fully and in detail and positively all the facts relative to the commencement of the equitable action for the abatement of the nuisance, the issuance of the injunction, the service of all papers upon the defendant; also, that "said injunctional order so made has not been dissolved or modified," and "that heretofore, namely, on the 19th day of April, 1911, the said Frank Finlayson was convicted in the district court of Burleigh county, North Dakota, before Honorable W. H. Winchester, judge of the said sixth judicial district, of the crime of contempt of court, violating an injunctional order duly issued by the said W. H. Winchester running to Frank Finlayson and others restraining them, and their clerks, servants, and employees, and each of them, during the pendency of a certain action then pending, from selling or disposing of intoxicating liquors as a beverage at other premises in the county of Burleigh, state aforesaid; and that pursuant to said conviction said Frank Finlayson was, on the 9th day of April, 1911, duly sentenced, and that formal judgment was entered against him on the 24th day of April, 1911, for contempt of court." The state's attorney further states in his affidavit that he is informed and believes that said Frank Finlayson has disregarded and disobeyed the injunctional order and mandate of the court in this,—"that on the 24th day of November, 1916, on the premises aforesaid he sold beer to one F. L. Watkins, and that during

the month of January, 1917, on the premises aforesaid he, the said Frank Finlayson, sold whisky to one Anton Melum, as a beverage, and that continuously since the 31st day of July, 1915, the said Frank Finlayson has kept a place at and upon the premises aforesaid, and in which said place persons were permitted to resort and did resort for the purpose of drinking said intoxicating liquors as a beverage."

As already stated there were three corroborating affidavits signed respectively by F. L. Watkins, Frank Toron, and Anton Melum. These corroborating affidavits were attached to, and by reference thereto specifically made a part of, the state's attorney's affidavit.

The material part of the affidavit of Watkins was as follows: "F. L. Watkins, of lawful age, being first duly sworn, says: 'I know the defendant, Frank Finlayson, and have seen him at this place of business; said business is that of a liquor dealer in the city of Bismarck, in the county of Burleigh, and state of North Dakota, at lots 19 and 20 in block 41, original plat of the city of Bismarck, and at the building located thereon. I was at his place of business on November 24, 1916, at which time and in which place I bought four bottles of beer, which was intoxicating liquor.' "

The affidavit of Frank Toron is identical with the above affidavit, with the exception of the last sentence therein, and instead of such sentence the Toron affidavit contains the following: "I was at his place of business on March 15, 1917, at which time and in which place I saw William Bones buy whisky, which was intoxicating liquor."

The Melum affidavit states in part: "I bought whisky from Frank Finlayson at said place many times."

The record also contains an affidavit by F. L. Watkins, signed April 9, 1917, and filed before the taking of any testimony, which contains this positive averment: "I was at his (Finlayson's) place of business November 24, 1916, at which time and place I bought four bottles of beer from Frank Finlayson."

In State v. Heiser, 20 N. D. 357, 127 N. W. 72, this court was called upon to determine the sufficiency of affidavits constituting the basis for an attachment. An examination of the affidavits involved, and held to be sufficient, in that case will disclose that the affidavits assailed in the case at bar present a stronger positive showing of violation by the defendant of the injunctional order than those involved and

sustained in the Heiser Case. And on the authority of that case, the affidavits in this case are held to be sufficient.

One of the grounds of defendant's motion to quash the warrant of attachment was that the equitable action had been dismissed, and hence, that the injunctional order which defendant was charged with violating had been annulled and set aside. In support of this proposition defendant submitted certain affidavits to the effect that H. R. Berndt, the state's attorney who instituted the equitable action, stated to the defendant in June, 1916, that such equitable action would be considered as dismissed, and that as soon as he (Berndt) could conveniently do so he would draw papers dismissing the case. Berndt, who was succeeded by McCurdy as state's attorney in January, 1917, died before the contempt proceedings were instituted, and no action had been taken by him for a dismissal, and there was absolutely nothing to indicate any intention on his part to dismiss the equitable action, but it remained pending to all intents and purposes; and (without expressing any opinion as to the propriety of the procedure adopted) we are wholly agreed that the trial court committed no error in refusing to quash the warrant of attachment on the affidavits submitted by the defendant in support of the motion to quash. In this connection it should be noted that, while no statement of the case has been settled, the clerk's minutes of the trial show that in all fourteen witnesses were called and examined in behalf of the state (including Watkins, Toron, and Melum, the three witnesses who made the corroborating affidavits, and that three witnesses were called and examined in behalf of the defendant. Inasmuch as no statement of case has been settled, we have no means of knowing what the different witnesses testified to, and must assume that the evidence adduced justified the court in making the findings it did. The findings show the commencement of the equitable action, the issuance of the temporary injunction therein, and the service thereof, together with the other papers upon the defendant, and the violation of the terms of the injunction by him; also, the former conviction of the defendant as set out in the affidavit of the state's attorney. The sufficiency of the findings is not questioned. And as already indicated, there is no contention that the evidence is insufficient to sustain the findings.

Appellant also contends that the warrant of attachment should have

been quashed for the reason that more than two years had elapsed since the alleged dates of the alleged offenses set out in the affidavits upon which the injunctional order was issued, and that any action thereon is barred by the statute. Appellant's contention is clearly untenable. In this case the defendant is not asked to answer for the acts specified in the affidavits upon which the injunctional order was issued, but for acts committed subsequent to the issuance, and violative of the terms, of the injunctional order. The affidavits which formed the basis for the warrant of attachment stated that the acts of the defendant which constituted contempt of court were committed in November, 1916, and in March, 1917. Manifestly these acts were alleged to have been committed within a period of two years prior to April, 1917.

Appellant also contends "that there is no allegation in the records anywhere as to any former conviction of a similar crime, and that therefore it was error to find him guilty of a second offense and punish him accordingly." We have already set out the portion of the state's attorney's affidavit alleging the former conviction. The allegation is clearly sufficient. Comp. Laws 1913, § 10,128; State v. Webb, 36 N. D. 235, 162 N. W. 358.

This disposes of the questions presented on this appeal, and it follows from what has been said that the judgment appealed from must be affirmed. It is so ordered.

GRACE, J. I concur in the result.

ROBINSON, J. (dissenting). The defendant was by affidavit charged with the crime of maintaining for the second time a common nuisance contrary to the statute and the order of the court. He was not prosecuted by indictment or information; he was denied a trial by jury, and in a summary manner he was convicted and sentenced to serve in the penitentiary for two years. He appeals to this court, claiming that the conviction is erroneous and without jurisdiction.

By statute whenever a district judge forbids the keeping of such is declared a common nuisance. For the first offense the punishment is not less than $200 nor more than $1,000, and imprisonment in the county jail not less than ninety days nor more than one year. For the

second and each subsequent offense, the punishment is not less than one year nor more than two years in the penitentiary. § 10,117.

By statute whenever a district judge forbids the keeping of such a common nuisance, then any person keeping the same contrary to the statute and the order of the court is guilty of a crime named a contempt. For such offense a person may be prosecuted, convicted and sentenced to the penitentiary without any indictment or information and without a trial by jury. The conviction may be on bogus and hearsay affidavits, which are made presumptive evidence of guilt. The accused may be required to answer questions concerning his guilt and to testify against himself. He may be punished for the first offense and for the second offense to the same extent precisely as if no injunctional order had been issued. This procedure is a recent discovery, and a most insidious contrivance for evading the right of trial by jury and for securing a conviction where a jury might fail to agree. A partisan statute names the crime a contempt, and then provides for a trial of the same in a summary manner. Under the statute when a person is accused of committing a crime contrary to law and the order of the court, his right to a trial by jury is forfeited. The forfeiture depends on the form of the accusation, and not on the guilt or innocence of the accused. Though the accused be ever so innocent, he cannot demand a trial by jury.

Of course the imprisonment of two years is for the keeping of a common nuisance. Were it for disregarding the order of the district court, it would be no bar to a prosecution for the real and primary offense. For that offense the accused would still be liable to punishment by indictment or information, to conviction by a jury, and to imprisonment for two years. But no one claims that the purpose of the statute was to duplicate the offense and the punishment. Its purpose was to convict the accused in the most summary manner without a trial by jury. And hence, the crime was named a contempt. Under a similar statute giving the same name to any other crime, a person might be accused and convicted of any crime, such as the contempt of robbery, or the contempt of murder.

In this case we should try to form a clear perception of the distinction between a trial for a crime and a summary contempt procedure. A crime or public offense is an act which the law forbids and punishes

with death, imprisonment, or fine. Comp. Laws, § 10,385. A crime is an offense against the state and the state alone may punish or condone it; a contempt of court—so far as it is not a crime—is an offense against the court or judge, and he alone may punish or condone it. A crime is punishable according to the law of the land; a contempt—so far as not a crime—is punishable only according to the will of the contemned judge. The same act, as the beating of a judge, may constitute both a crime and a contempt. In such a case, the judge may condone the personal offense, or punish it summarily by fine and imprisonment. ' And in accordance with the law of the land, the state may prosecute and punish the criminal offense. The summary punishment by an offended judge is merely a personal affair between him and the offender. It is not strictly a legal proceeding. It does never convict the offender of a crime or brand him as a criminal.

By statute in certain specified cases, a contempt of court is made a misdemeanor. § 9419. And in such cases a court of record may summarily punish the contempt by a fine not exceeding $250 or by imprisonment not exceeding thirty days or both. §§ 8178, 8179. The statute fixes a definite limit on any summary punishment,—it says to the court, "Thus far mayest thou go, and no farther." But when the state commences a prosecution to invoke and call down the penalties of the law, then its procedure must conform to the law and the Constitution; then the accused must have a trial by jury, and he cannot waive it. He cannot even by express consent give the judge jurisdiction to try the case.

When a prosecution is for a crime, then it is no summary matter, then it is not a word and a blow, then there must be a strict observance of these sacred guaranties of the Constitution.

Section 7. The right of trial by jury shall be secure to all and shall remain inviolate.

Section 8. All offenses shall be prosecuted criminally by indictment or information.

Section 13. No person shall be compelled in any criminal case to be a witness against himself.

We need not argue to prove that the right of trial by jury should forever be held sacred. Arbitrary power may not safely be given to any man. It makes him a tyrant and a despot, it ruins the character of a

judge. As Blackstone has written:—In settling and adjusting questions of fact, when intrusted to a single magistrate, partiality and injustice have ample field to range in; either by boldly asserting to be true that which is not so, or by more artfully suppressing some circumstances, stretching and warping others, and distinguishing away the remainder.

In the early days, one Markuson was summarily convicted of the crime of contempt and sentenced to the penitentiary for two years. The conviction was sustained by a specious and politic decision. State v. Markuson, 5 N. D. 147, 64 N. W. 934. And now in a stand pat way, without defending it, some of our justices seem disposed to follow the lead of that case. The reasons of the decision do not all appear in black and white. Here is the gist of the specious reasoning: It was not the purpose of the statute to punish for a substantive offense under the guise of punishing for contempt. At common law in a summary proceeding the courts had power to convict and imprison the accused for two years. That jurisdiction is inherent in the courts of this state. Hence the statute served no purpose only to give to the judges nerve and backbone.—Just think of it, two years in the penitentiary—the highest penalty of the statute, and still, as the court says, it was not the purpose to punish for a substantive offense!

Alas! then truth and candor wept.

And, at common law the courts never exercised any such jurisdiction. Furthermore, in contempt cases, the courts of this state have never had any common-law jurisdiction. The arbitrary power that judges once exercised as a part of the royal prerogative was never imported to the Dakotas. It was not in keeping with the western spirit of freedom, equality, and independence. Hence, the statute does justly fix a narrow limit to the arbitrary power of judges.

Finally, the questions presented are these:

1. Was the defendant convicted of the crime of keeping a common nuisance? Ans. Yes.

2. Was he under the statute convicted of a felony and sentenced to imprisonment for two years? Ans. Yes.

3. Was he prosecuted by indictment or information? Ans. No.

4. Did he have a trial by jury? Ans. No.

These direct questions and answers may not be artfully suppressed

or distinguished away or ignored; they admit of no dispute, no evasion, no equivocation. *Under the Constitution, as it is, no person may be convicted of any crime and sent to the penitentiary without a trial by jury.* Hence, in this case the trial and conviction and sentence were in direct conflict with the fundamental law.

The majority decision has been given without any conference or discussion of the great questions of constitutional law presented by this dissent. It merely follows an old political decision, which is manifestly wrong. Indeed, it is a reproach to the court. It does manifest violence to the plain words of the Constitution. No judge or lawyer can honestly attempt to maintain that under our Constitution a person may be convicted of crime and sentenced to the penitentiary for two years without a trial by jury. No one can maintain that the guaranties of the Constitution may be changed or evaded by any name the legislature may choose to give to a crime. Hence, let us hope that on a motion to reconsider each judge of the court may declare the law in accordance with his oath and the Constitution, regardless of any political fear or favor.

Furthermore, "It is not within the province of a legislature to declare a person guilty or presumptively guilty of a crime." McFarland v. American Sugar Ref. Co. 241 U. S. 86, 60 L. ed. 904, 36 Sup. Ct. Rep. 498. Hence the legislature may not make an accusation presumptive evidence of crime.

Under § 10,118, Compiled Laws, defendant is charged with a second offense. The affidavit charging the offense is made presumptive evidence of guilt; the fine is excessive; it is not less than one nor more than two years in the penitentiary, and defendant is denied a trial by jury. For these reasons the statute is void; it is too drastic.

The minimum or lowest degree of the offense charged may consist of nothing more than the harmless sale of a few bottles of beer—a thing not *malum in se*—a thing legal and common in most countries, and not forbidden by Scripture. One year in the penitentiary is the least punishment for all crimes excepting treason, murder, manslaughter in the first and second degree, arson and burglary, forgery in the third and fourth degrees, grand larceny, perjury, manslaughter in the second degree, maiming, shooting with intent to kill, assault with intent to kill, robbery, dueling, assault with a dangerous weapon, rape in the

second degree, adultery, abortion, child stealing, bigamy, incest, sodomy, burglary in the third degree, and extortion.

Manifestly, the least penalty for such odious crimes is excessive when applied to the lowest grade of crime contrary to § 10,118. Hence, the statute is void for three reasons: (1) Its penalties are excessive; (2) it makes an accusation presumptive evidence of crime; (3) it denies the right of trial by jury.