STATE of North Dakota, Plaintiff
and Respondent,

v.

Mary HEATH, Defendant and Appellant.

STATE of North Dakota, Plaintiff
and Respondent,

v.

Carol DORSEY, Defendant and Appellant.

STATE of North Dakota, Plaintiff
and Respondent,

v.

Dwight REDFERN, Defendant
and Appellant.

Nos. 8607–8609.

Supreme Court of North Dakota.

June 2, 1970.

Helgi Johanneson, Atty. Gen., Bismarck, and Richard B. Thomas, States Atty., and Wallace D. Berning, Asst. States Atty., Minot, for plaintiff and respondent State.

Pringle & Herigstad, Minot, for defendants and appellants.

Bruce M. Van Sickle, of McGee, Van Sickle, Hankla, Backes & Wheeler, Minot, amicus curiae.

STRUTZ, Judge, on reassignment.

The defendants in the three above-entitled actions were convicted of criminal contempt of court, under Section 27–10–01(3), North Dakota Century Code. This section provides that a court of record of this State may punish, as for a criminal contempt, any person guilty of any:

"3. Willful disobedience of any process or order lawfully issued or made by it; * * *."

The record discloses that more than 100 persons teaching in Minot Public School District No. 1 went on strike on April 2, 1969, and the Minot schools were forced to close. As a result of the teachers' action, the school district commenced a civil suit to enjoin the strike. A temporary restraining order was issued by the district court on April 7, 1969. Such temporary order was followed, on April 9, 1969, after a hearing, by a permanent order. At that hearing, prior to the issuance of the permanent order, the court found, among other things, that the defendants were employed by Minot Public School District No. 1 for the school year 1968–1969; that the defendants had been on strike and were engaged in picketing and that such strike and picketing were unlawful; and that the defendants did intentionally violate and disregard the temporary restraining order issued by the court on April 7, 1969. On this record, the trial court ordered that the temporary restraining order be made permanent, and that the defendants, and each of them, be permanently restrained and enjoined from conducting any picketing, work stoppage, or strike against Minot Public School District No. 1, and the individual defendants were restrained from continuing to remain unlawfully absent from their posts of duty as public employees.

The record further shows that copies of the permanent restraining order were served, by the sheriff or one of his deputies, upon each of the defendants named, as shown by the returns of service, and that at the time such copies were served upon the defendants each one of them was shown the original signature of the Honorable Roy A. Ilvedson, judge of the district court, who issued the permanent restraining order, as such signature appeared on the original copy of the permanent restraining order.

It is charged that each of the three defendants whose cases now are before this court on appeal thereafter did violate and disobey the permanent restraining order of the district court. These three, together with twenty-one other teachers, were arrested for alleged willful disobedience of the permanent restraining order of the court. The acts of the defendants which were alleged to have been in violation of the court's order were not committed in the view or presence of the court, but affidavits setting forth the facts were presented to the court, and the court, on the strength of such affidavits, issued a warrant of attachment directed to the sheriff of Ward County, commanding him to arrest the accused and bring them forthwith before the court to answer for such alleged offenses.

It was found to be difficult to fix a time for hearing which was agreeable to all the parties, and a hearing on such contempt

charges therefore was delayed. The matter finally came on for hearing before the court on Monday, August 18, 1969, at 10:10 p.m. At such hearing, Jan M. Sebby, of the firm of Pringle & Herigstad, appeared for and on behalf of the defendants, and Wallace D. Berning, assistant State's attorney of Ward County, appeared on behalf of the State. At such hearing, sworn evidence was produced on behalf of the State. Deputy Sheriff Heilmann testified that he had observed the defendant Mary Heath, on April 28, 1969—which was subsequent to the date of service of the permanent restraining order upon her—engage in picketing by walking back and forth across the entrance lane of the north gate of the Minot Air Force Base. The record discloses that as the defendant Heath walked back and forth across the entrance lane of Minot Air Force Base on such occasion, she accompanied other persons who were carrying picket signs referring to the Minot teachers' strike. Cross-examination of Deputy Sheriff Heilmann stressed that defendant Heath was not personally carrying a picket sign. However, we deem this immaterial because she was engaged in picketing.

Olaf Haaland, sheriff of Ward County, testified that he personally observed the defendant Carol Dorsey—at a time subsequent to service of the permanent restraining order upon her—engage in picketing by walking back and forth in front of Minot High School, carrying a picket sign.

Deputy Sheriff Soltis testified that he personally had seen the defendant Dwight Redfern—at a time subsequent to the date of service of the permanent restraining order upon him—engage in picketing by walking back and forth in front of the Board of Education building, carrying a sign on which appeared the words "Happiness is Good Faith Negotiation."

On this record, the court found the defendants guilty of criminal contempt and sentenced them to be confined in the county jail for a period of thirty days and to pay a fine of $250, plus $15 costs. The sentence imposed is the maximum sentence provided for under Section 27–10–02, North Dakota Century Code. The jail sentence in each case was suspended on condition of good behavior of the defendant, which was to include no further unlawful picketing.

From the final order and warrant of commitment entered in each case, each of the three defendants herein has appealed to this court.

In support of their appeals, the defendants urge a number of specifications of error. They first assert that the procedure provided for in Section 27–10–13, North Dakota Century Code, is unconstitutional, in that it permits the court to determine whether the accused has committed the offense charged, and that the defendant thus is denied his constitutional right to a trial by jury.

■ A contempt is a crime in every essential respect. Thus criminal contempt, which was the charge against each of the defendants, is a crime in the ordinary sense. It is a violation of the law, a public wrong, and it is punishable by fine or imprisonment, or by both. Sec. 27–10–02, N.D.C.C. As Justice Holmes said, in Gompers v. United States, 233 U.S. 604, 34 S. Ct. 693, 58 L.Ed. 1115:

"* * * These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."

Since criminal contempt is a crime in every fundamental respect, our next question is whether it is a crime to which the jury provisions of the Federal and the State constitutions apply.

North Dakota has held that one charged with contempt is not entitled to a jury trial as a matter of right. State v. Markuson, 5

N.D. 147, 64 N.W. 934; State v. Finlayson, 41 N.D. 494, 170 N.W. 910.

Other courts have reached the same conclusion. Upper Lakes Shipping Ltd. v. Seafarers' International Union of Canada, 23 Wis.2d 494, 128 N.W.2d 73; Commonwealth v. McHugh, 326 Mass. 249, 93 N.E. 2d 751; Weiss v. State ex rel. Cardine, 455 P.2d 904 (Wyo.1969).

Thus, in criminal contempt cases, a judge sits as both judge and jury, and his decision has the effect of a jury verdict. In re Adoption of Myers, 196 Tenn. 219, 265 S.W.2d 12.

So far as we have been able to determine, the above has been the law in a vast majority of jurisdictions, except where specific provision is made for trial by jury in contempt cases. In June of 1948, Congress enacted a law which provides that in all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders, in cases growing out of labor disputes, the accused shall have the right to a jury trial. 18 U.S.C.A. Sec. 3692. This section, of course, would not apply in the case before us.

▮ In 1968, the United States Supreme Court handed down a decision in the case of Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, in which the Court held that criminal contempt is a crime in every essential respect, and that serious criminal contempts are so nearly like other serious crimes that they should be subject to constitutional provisions for trial by jury. However, the Court held in *Bloom* that petty contempts may be tried without a jury.

Since *Bloom*, therefore, courts are required to give the defendant in a criminal contempt case a trial by jury if the offense is considered a serious contempt. The Court, in that case, did not define what it meant by "serious" or what would constitute only a "petty" contempt. In *Bloom*, the defendant had been sentenced to twenty-four months' imprisonment for criminal contempt, and the Court held that that charge was so serious as to entitle him to a jury trial. However, the Court went on to say that when the Legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty, the best evidence of the seriousness of the offense is the penalty which actually is imposed upon the defendant in the action.

Our statute provides a specific penalty for criminal contempt, under which the defendants in the cases before us were charged. Section 27–10–02, North Dakota Century Code, provides that any person guilty of an act punishable as for criminal contempt may be punished by a fine of not more than $250 and by imprisonment in the county jail for not more than thirty days. Although the United States Supreme Court, in *Bloom*, did not define petty or serious offenses, that Court, in the case of Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed. 629, held that a defendant charged with criminal contempt, where the penalty was six months' imprisonment, was not entitled to a jury trial.

▮ Thus we see that, although summary punishment for criminal contempt preserves the dignity, effectiveness, and efficiency of the judicial process, those interests are outweighed by the need to provide a defendant charged with a serious criminal contempt with all the procedural protections which are deemed fundamental, including trial by jury. However, this does not affect the power of a court to punish persons charged with petty contempts summarily and without a jury trial. Where the Legislature, in the statute under which the defendants in these cases were charged, has fixed the maximum penalty for the offense of criminal contempt at thirty days in jail and a $250 fine, we find such criminal contempt to be petty criminal contempt. Therefore, the defendants were not entitled to a jury trial as a matter of right.

■ The defendants next assert that the trial court erred in denying and overruling the defendants' objection that the conduct of the defendants complained of is protected by the provisions of the Federal and the State constitutions, which prohibit enactment of laws which abridge freedom of speech and the right of peaceable assembly. The defendants contend that the permanent restraining order of the trial court was absolutely void because it improperly attempts to restrict their exercise of these fundamental rights.

■ We find no merit in this contention. If the defendants honestly believed that the trial court's restraining order was invalid, as they now assert, orderly judicial procedure would have dictated that they attack the validity of such order by motion to dissolve it, or by other judicial procedure. But the defendants did not see fit to follow orderly legal procedure. They chose, instead, to deliberately disobey and violate the restraining order which had been served upon them. Any order of the trial court, having jurisdiction of the subject-matter and the parties, is presumed prima facie valid until, by legal steps—which were available to the defendants—it has been held to be invalid.

The defendants' contention that the restraining order in question denied their fundamental rights of freedom of speech and freedom of assembly therefore cannot be sustained. The overwhelming weight of authority in this country holds that the State may deny its employees the right to strike, and it constitutionally may enjoin peaceful picketing. Such denial is not an infringement of the constitutional rights of such employees. School District for City of Holland, Ottawa and Allegan Counties v. Holland Educational Assn., 380 Mich. 314, 157 N.W.2d 206; Minneapolis Federation of Teachers Local 59, A.F.L.–C.I.O. v. Obermeyer, 275 Minn. 347, 147 N.W.2d 358. It has been held that the State, in enforcing some public policy, may constitutionally enjoin picketing aimed at preventing effectuation of that policy, even where picketing is against a private employer. International Brotherhood of Teamsters Local 695, A.F.L. v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347.

Orderly judicial procedure would require anyone who disagrees with an order of the court, and who believes such order to be invalid, to test the validity thereof in court. He should not deliberately violate such order merely because he, personally, does not agree with it.

If every defendant were held to have the right to disobey any court order which is not to his liking, orderly legal procedure would cease to exist and chaos would result. The Constitution and our laws contemplate an orderly assertion of our constitutional rights, permitting orders of a court to be attacked only by legal means, even though such orders might have been improvidently issued—which we do not believe is true in these cases. No one may be permitted to deliberately violate any court order which he personally might believe to be invalid. To condone deliberate violation of court orders would imperil our public peace and safety. An orderly, free society cannot exist if each person is to be permitted to determine for himself which court orders he shall obey and which court orders he shall disobey, regardless of the justification which an individual, in his own mind, may feel that he has for such disobedience. If wanton techniques of deliberate disobedience of court orders are to be permitted to take the place of due process of law, our American system of law and order will perish.

Finally, the defendants contend that the trial court erred in finding that the defendants were guilty of criminal contempt by engaging in picketing, because the evidence in these cases—

(a) Did not establish that the defendants' conduct impeded or obstructed a vital governmental function, the proper and efficient education of the children; and

(b) Did not establish that the defendants' conduct was violent, disorderly, or harmful or anything other than peaceful.

The permanent restraining order of the court, which the defendants are charged with disobeying, enjoined the defendants from conducting any picketing, work stoppage, or striking against Minot Public School District No. 1. It further restrained the defendants from continuing to remain unlawfully absent from their posts of duty as public employees.

The evidence established, beyond any reasonable doubt, that the defendants violated this order by conducting picketing and striking against their school district and by remaining unlawfully absent from their posts as teachers. The fact that this was done peaceably and without violence is immaterial. The deliberate conduct of the defendants was in willful violation of the order of the court, and it therefore was contemptuous. Picketing, even though it is peaceful and without violence and disorder, and even though it does not actually obstruct a governmental function, if used for the purpose of fostering and supporting an illegal strike against a governmental employer, is unlawful and may be enjoined. City of Minot v. General Drivers & Helpers Union No. 74, 142 N.W.2d 612 (N.D. 1966). (The trial court by its order found the strike of the teachers to be illegal.)

The United States Supreme Court, in International Brotherhood of Teamsters Local 695 v. Vogt, *supra*, held that a State may constitutionally enjoin picketing, even of a private employer, if such picketing is in violation of a declared policy of the State.

We therefore hold that defendants' picketing, even though it was peaceful, was for an unlawful purpose and may be enjoined.

For reasons stated in this opinion, the final order and warrant of commitment entered against each of the defendants is affirmed.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.